Darrell OGILVIE, et al., Appellants,

v.

INDEPENDENT SCHOOL DISTRICT NO. 341, ATWATER, Minnesota, Respondent.

No. C5–81–1252.

Supreme Court of Minnesota.

Feb. 11, 1983.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Donald W. Selzer, Jr., St. Paul, for appellants.

Peterson, Popovich, Knutson & Flynn, Peter S. Popovich and Patricia A. Maloney, St. Paul, for respondent.

COYNE, Justice.

Darrell Ogilvie, a teacher, and the Atwater Education Association (AEA), the teachers' local bargaining unit under the Public Employment Labor Relations Act, Minn. Stat. §§ 179.61 to 179.76 (1982) (PELRA), brought an action for injunctive and declaratory relief against Independent School District No. 341, Atwater, Minnesota. The plaintiffs alleged that the school district had committed an unfair labor practice under Minn.Stat. § 179.68, subd. 2 (1982) by refusing to meet and negotiate the involuntary part-time transfer of Ogilvie to an adjacent school district pursuant to a joint powers agreement and that the school district had breached Ogilvie's continuing contract rights under Minn.Stat. § 125.12 (1982). Concluding that Ogilvie's part-time assignment to an adjacent school district is a matter of inherent managerial policy and not a subject for negotiation and that the school district had neither breached Ogilvie's contract nor committed an unfair labor practice, the district court entered judgment in favor of the school district. We affirm.

In May of 1981, in response to declining enrollment, decreasing funds, and increasing expenditures, the Atwater school district entered into discussions with two nearby school districts, Grove City and Cosmos, regarding the possibility of teacher sharing and other forms of cooperation. During the

summer of 1981 Atwater school district entered into joint powers agreements pursuant to Minn.Stat. § 471.59 (1982) with both the Grove City and Cosmos school districts. The agreement with Grove City was implemented smoothly; two Atwater teachers volunteered to teach part-time at the nearby Grove City school. Implementation of the agreement with Cosmos, however, proved troublesome, and it is Atwater's assignment of a vocational agriculture teacher to the Cosmos school which precipitated these proceedings.

When the Atwater and Cosmos school district officials met to discuss the feasibility of the proposed sharing of a vocational agriculture teacher, both of Atwater's agriculture teachers, Darrell Ogilvie and Gordon Pennertz, attended. Both teachers objected to the proposal that an Atwater teacher be assigned to teach two hours daily at the Cosmos school and suggested that Cosmos bus its students to Atwater, a proposal which Cosmos rejected for educational and financial reasons.

On several occasions before the arrangements between Atwater and Cosmos were completed, Ogilvie expressed to the Atwater superintendent and principal his objections to his proposed assignment to the Cosmos school for two hours each day. Ogilvie, the senior teacher, taught only one high school class. He spent the remainder of the school day supervising the student on-the-job training program and the adult farm management program. The adult farm program required Ogilvie to travel three or four hundred miles monthly. The farm of one adult student was located outside the Atwater school district. Although Ogilvie had not objected to the travel required by the adult farm program, he objected strenuously to the Cosmos assignment, which would triple his daily mileage.

On June 4, 1981, the area MEA representative advised the Atwater superintendent in writing that the planned assignment of the senior agriculture teacher to Cosmos appeared to be violative of Minn.Stat. § 125.12, subd. 6(b) and Article XIII of the collective bargaining agreement between Atwater and the AEA. On June 6th Ogilvie was notified that his teaching schedule for the 1981–82 school year included part-time assignment to Cosmos. The Cosmos assignment did not result in any modification of Ogilvie's wages or fringe benefits, nor did it extend his duty day. Travel time to and from Cosmos was incorporated into his schedule, and he was reimbursed for mileage at the rate of 19 cents per mile.

On June 15, 1981, Atwater and Cosmos entered into a joint powers agreement. From time to time during the summer Ogilvie, Pennertz, and the Atwater superintendent discussed the arrangement with Cosmos, and on several occasions the superintendent asked Pennertz if he would accept the Cosmos assignment but Pennertz declined. On August 27, at Ogilvie's request, the superintendent informally polled the members of the school board, but they were unwilling to alter the assignment. Shortly thereafter this action was commenced.

On appeal plaintiffs have withdrawn their claims of breach of contract under § 125.12, and they concede the propriety of the trial court's conclusions that the decision to assign a vocational agriculture teacher to teach two hours daily in the Cosmos school pursuant to the provisions of the joint powers agreement between the Atwater and Cosmos School Districts is a matter of inherent managerial policy and not a subject for negotiation. In this respect, of course, the trial court's conclusion fully comports with the rule set out in *Minneapolis Federation of Teachers, Local 59 v. Minneapolis Special School District No. 1,* 258 N.W.2d 802 (Minn.1977), and the provisions of Minn.Stat. § 179.66, subd. 1. Accordingly, the sole issue presented is whether or not Ogilvie's part-time extra-district assignment without meeting and negotiating the criteria and procedure for such assignment constitutes an unfair labor practice under Minn.Stat. § 179.68, subd. 2 (1982).

PELRA imposes upon a public employer the obligation to meet and negotiate in good faith regarding terms and conditions of employment. Minn.Stat. § 179.66, subd.

2. Section 179.63, subd. 18, defines terms and conditions of employment as "the hours of employment, the compensation therefor including fringe benefits except retirement contributions or benefits, and the employer's personnel policies affecting the working conditions of the employees." That definition is, however, "subject to the provisions of section 179.66", which provides, at subdivision 1, that

"[a] public employer is not required to meet and negotiate on matters of inherent managerial policy, which include, but are not limited to, such areas of discretion or policy as the functions and programs of the employer, its overall budget, utilization of technology, the organizational structure and selection and direction and number of personnel."

In *Minneapolis Association of Administrators and Consultants v. Minneapolis Special School District No. 1,* 311 N.W.2d 474 (Minn.1981), we held that the impact upon the terms and conditions of employment of an inherent managerial policy decision to divest certain positions of administrative functions does not render the manner in which the basic decision is made a subject of mandatory negotiations. The criteria and procedure for carrying out a reduction in supervisory personnel was so inextricably interwoven with the inherent managerial policy decision concerning the organizational structure of the school district that requiring the school district to meet and negotiate the method of determining which positions to divest of administrative functions would have required the school district to negotiate the basic decision—a matter of inherent managerial policy which it had no obligation to negotiate.

■ In *Minneapolis Federation of Teachers, supra,* however, we held that the inherent managerial policy decision to transfer a number of teachers was severable from the adoption of criteria for determining which teachers were to be transferred. Although the decision to transfer a number of teachers was a managerial decision not subject to negotiation, the criteria for determining which teachers were to be transferred was

negotiable. Requiring the school board to meet and negotiate was not likely to hamper the school board's direction of educational objectives.

■ There are, of course, significant differences in what is likely to hamper the direction of educational objectives in a school district which employs about 3500 teachers and what is likely to impede the direction of educational objectives in a school district like Atwater, which employs about 45 teachers. The adoption of criteria by which individual teachers may be identified for part-time extra-district assignment pursuant to a joint powers agreement is, like the intra-district transfer of teachers, a proper subject for negotiation and, as such, is properly included in the collective bargaining agreement. Nevertheless, since Pennertz was placed on unrequested leave of absence at the close of the 1981–82 school year and Ogilvie is now the sole vocational agriculture teacher employed by the Atwater school district, the question of which teacher is to be assigned part-time to the Cosmos school district pursuant to the joint powers agreement is moot; and we have addressed this issue in order to determine the propriety of the trial court's determination that the school district did not commit an unfair labor practice.

Under Minn.Stat. § 179.68, subd. 2, a public employer is prohibited from interfering, restraining or coercing employees in the exercise of the rights guaranteed under PELRA (clause 1) or refusing to meet and negotiate in good faith with the exclusive representative of its employees in an appropriate unit (clause 5). The plaintiffs concede that they did not demand that the school district meet and negotiate the criteria by which teachers may be identified for part-time assignment pursuant to a joint powers agreement and that the school district did not refuse to do so. The Atwater superintendent testified that the school district was willing to negotiate the impact of assigning teachers outside the school district. Moreover, the collective bargaining agreement between the school district and AEA reserves to the superintendent the

right to assign personnel to their specific positions within the type of service for which the teacher has been hired. While the agreement does not restrict the superintendent to intradistrict transfers, it is silent on the subject of extra-district assignments or transfers, and its application with respect to extra-district assignments is at least doubtful. *See Minnesota Education Ass'n v. Independent School District No. 495, Grand Meadow,* 290 N.W.2d 627 (Minn. 1980). We hold, therefore, that the school district has violated neither section 179.68, subd. 2(1), nor 179.68, subd. 2(5).

The judgment in favor of the school district is affirmed.