FOLEY EDUCATION ASSOCIATION, et al., Appellants,

v.

INDEPENDENT SCHOOL DISTRICT NO. 51, etc., Respondent.

No. C6–83–485.

Supreme Court of Minnesota.

Aug. 31, 1984.

---

Eric R. Miller, Donald W. Selzer, Jr., John R. Tunheim, St. Paul, for appellants.

James E. Knutson, David S. Bartel, St. Paul, for respondent.

COYNE, Justice.

Cindy Leigh and Joyce Ross, teachers employed by the Independent School District No. 51, Foley, Minnesota, and the Foley Education Association (FEA), the teachers' exclusive bargaining agent under the Public Employment Labor Relations Act, Minn.Stat. §§ 179.61 to 179.76 (1982) (PEL-RA), appeal from a judgment of the district court denying their request for injunctive relief against the respondent school district. They allege that the school district committed unfair labor practices under Minn.Stat. § 179.68, subd. 2 (1982), by refusing to meet and negotiate its decisions to institute changes in teaching assignments and scheduling during the 1982–83 school year. We affirm in part, reverse in part, and remand.

From approximately 1967 until the 1982–83 school year the school district regularly assigned secondary teachers to five hours of classroom instruction, one hour of study hall supervision, and one hour of class preparation per day. The school district also consistently allowed elementary teachers 50 minutes of preparation time during the student contact day—i.e., the school day. The basis of dispute is the teachers' charge that the school district committed unfair labor practices in the 1982–83 school year by unilaterally implementing (1) a reassignment of secondary school teachers from five to six instructional hours a day without additional compensation, (2) a reduction in elementary teacher preparation time from 50 to 25 minutes per student contact day, and (3) the employment of nonteachers to perform study hall supervision duties previously done by teachers. The teachers contend these changes involved "terms and conditions" of their employment and hence, were mandatorily bargainable. Finding that the changes were consistent with the parties' current collective bargaining agreement and were actually negotiated prior to the execution of that agreement, the district court concluded that the school district did not commit an unfair labor practice by failing to bargain.

The collective bargaining agreement in effect at the time these changes were instituted was for the 1981–82 and 1982–83 school years. During the negotiations for this agreement, the FEA proposed language which would have prohibited the school district from assigning secondary school teachers to a sixth hour of instruction except by mutual consent and with additional compensation. Other language proposed would have guaranteed both ele-

mentary and secondary school teachers a "continuous" 50-minute preparation period during the student contact day.[1]

After several unsuccessful attempts to convince the district to incorporate these proposals into the parties' agreement, at a final mediation session on October 20, 1981, the FEA dropped the language. The FEA contends that its decision to drop its proposal regarding secondary class assignments rested on the school district's assurances that it had no intention of altering its past practice of assigning five hours of classroom instruction per day. The trial court found, however, that throughout the negotiations the school district had advised the FEA that its proposals were unacceptable because the school district wished to retain discretionary power to increase secondary instructional assignment and to reschedule elementary class preparation time.

Although the parties reached substantial accord in October 1981, the collective bargaining agreement was not formally executed until July 1982. In the interim, at a Foley school board meeting on March 22, 1982, the board passed a resolution increasing secondary school teaching assignments from five to six hours per day. As a result of this action, which contained no provision for additional pay but which was expressly designed to effect an annual saving of approximately $250,000, eight teachers were placed on unrequested leave of absence.[2] On May 17, 1982, a hearing was held pursuant to Minn.Stat. § 125.12 (1982), and on May 25, 1982, the hearing officer released his proposed decision. Citing the scheduling changes, budgetary constraints, and decrease in the number of pupils, the hearing officer found adequate statutory basis for the school district's action.

On May 28, 1982, the high school sent to all secondary teachers written notice of the schedules for the 1982–83 school year. According to these schedules each teacher was assigned six periods of classroom instruction and one period of study hall supervision each day. The schedules did not provide preparation time during the school day. Since, however, under the Department of Education rules secondary school teachers must have one duty-free period during the school day, on July 26, 1982, the school district restored the preparation period by eliminating the period of study hall duty and hired non-licensed personnel to supervise the study halls.

Prior to the end of the 1981–82 school year the elementary school teachers were also informed that during the coming year they would have no preparation time during the student contact day; preparation time would be available only at the beginning and end of the teachers' workday. Ultimately, the district gave each elementary teacher 25 minutes of preparation time during the student contact day of the 95 minutes allotted for that purpose each work day.

■ Resolution of this appeal depends upon two related issues concerning each of the school district's changes in teacher scheduling and assignments. PELRA places an obligation on public employers to meet and negotiate in good faith with their employees' exclusive representative regarding the terms and conditions of their employment. Minn.Stat. § 179.66, subd. 2 (1982). Under Minn.Stat. § 179.68, subd. 2, it is an unfair labor practice for a public employer to interfere with or restrain its employees in the exercise of their PELRA rights (clause 1) or to refuse to negotiate in good faith with its employees' chosen bargaining representative (clause 5). A well established labor law principle is that unilateral changes by an employer in terms and conditions of employment are prima

---

1. By rule, the state requires school districts to afford secondary school teachers a free period for preparation and conferences during the school day. Minn. R. 3500.3700, subpart 3 (1983). The rules do not make similar provision for elementary school teachers. Hence, the proposed language, had it been accepted, would have affected the interests of elementary teachers only.

2. See *Atwood v. Independent School District No. 51, Foley, Minnesota*, 354 N.W.2d 9 (Minn. 1984), filed herewith.

facie violations of its employees' collective bargaining rights. *N.L.R.B. v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); *General Drivers Union Local 346 v. Independent School District No. 704*, 283 N.W.2d 524 (Minn.1979). As the United States Supreme Court explained in *Katz*, even in the absence of subjective bad faith, an employer's unilateral change of a term and condition of employment circumvents the statutory obligation to bargain collectively with the chosen representative of his employees in much the same manner as a flat refusal to bargain. *Id.* 369 U.S. at 743, 82 S.Ct. at 1111.

■ It is also well settled, however, that a unilateral change is not *per se* an unfair labor practice. First, because the duty to bargain exists only when the matter concerns a term and condition of employment, it is not unlawful for an employer to make unilateral changes when the subject is not a "mandatory" bargaining term. *Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 185, 92 S.Ct. 383, 400, 30 L.Ed.2d 341 (1971). Second, since only unilateral *changes* are prohibited, an unfair labor practice will not lie if the "change" is consistent with the past practices of the parties. R. Gorman, *Basic Text on Labor Law*, 450–54 (1976). Finally, even if there has actually been a unilateral change in a term and condition of employment, the employer may successfully defend the action by demonstrating that there was not a bad faith refusal to bargain. The crucial inquiry in such event is whether the employer's unilateral action deprived the union of its right to negotiate a subject of mandatory bargaining. Hence, if the record demonstrates either that the union was in fact given an opportunity to bargain on the subject or that the collective bargaining agreement authorized the change or that the union waived its right to bargain, courts will not find bad faith. *N.L.R.B. v. Cone Mills, Corp.*, 373 F.2d 595 (4th Cir.1967); *Gorman, supra*, 400, 443–45. Accordingly, the two questions to be decided here with respect to each of the school district's scheduling changes, are (1) whether or not the change

involved the terms and conditions of the teachers' employment, and (2) whether the school district's failure to discuss the changes with the FEA prior to their implementation constituted an unfair labor practice.

Minn.Stat. § 179.63, subd. 18 (1982), defines "terms and conditions of employment" as "the hours of employment, the compensation therefor including fringe benefits except retirement contributions or benefits, and the employer's personnel policies affecting the working conditions of the employees." There is little dispute that the school district's decision to increase the teachers' class assignments from five to six hours was a mandatorily negotiable subject. We have already recognized in the context of an arbitration clause dispute that an increase in student contact time may lengthen teachers' hours of employment, and, hence, affect the "economic aspects" of their positions. *Minnesota Federation of Teachers, Local 331 v. Independent School District No. 361*, 310 N.W.2d 482 (Minn.1981). It seems clear to us that forcing teachers to teach more classes and more students at the same rate of pay affects a term of their employment. The crucial question, therefore, is whether the district's failure to negotiate the increase with the union was an unfair labor practice.

■ Consistent with the rule adopted by federal courts, we have held that an employer may not be charged with an unfair labor practice in the absence of a demand for negotiation following the union's receipt of information of a planned change in a term or condition of employment. *E.g., Ogilvie v. Independent School District No. 341*, 329 N.W.2d 555 (Minn.1983). *National Labor Relations Board v. Alva Allen Industries, Inc.*, 369 F.2d 310, 321 (8th Cir.1966). The presumption that an employer's unilateral change deprived the union of its right to bargain vanishes when the record as a whole reveals that the union never sought to bring the employer to the bargaining table. *National Labor*

*Relations Board v. Cone Mills Corp.*, 373 F.2d 595 (4th Cir.1967).

Concomitantly with this recognition, we have also held that a union's failure to demand bargaining regarding a change in a term or condition of employment will not constitute waiver of the right to negotiate unless the record shows that the employer gave both adequate and timely notice of its intended action. *General Drivers Union Local 346 v. Independent School District No. 704*, 283 N.W.2d 524 (Minn.1979). And while the notice given need not be formal, it must be sufficient under the circumstances to inform the union "a decision has been made, or that one is imminent, before that decision is implemented." *General Drivers Union Local 346 v. Independent School District No. 704, supra*, at 528.

▬ The record in this case demonstrates that the FEA had both sufficient and timely notice of the school district's intent to increase teaching assignments from five to six hours per day. From the time the school board resolved to increase the teaching assignments on March 22, 1982, until the implementation of the change at the commencement of the school year in August, the FEA received notification of the district's decision through at least three avenues. In addition to the knowledge of the proposal and its purpose obtained by the teachers who attended the March board meeting, the district's intent to increase the secondary class assignments was made evident by the findings issued on May 25, 1982, by the hearing officer and the May 28th notification of the changes provided to both elementary and secondary school teachers. Even if the schedules given the teachers on May 28th were regarded as the only notice, the FEA had at least three months before the commencement of the school year to demand that the school district meet and negotiate. *See, N.L.R.B. v. Cone Mills Corp.*, 373 F.2d 595 (4th Cir.1967). (One month is a sufficient amount of time for the union to have an opportunity to request bargaining on a proposed unilateral change).

Despite these facts, the FEA contends that it had insufficient notice to justify a finding that it had waived its right to demand negotiation. It argues that the past practice of the district was to give teachers additional compensation for teaching a sixth class and that therefore notice of the increased class assignments did not apprise it of the district's decision not to provide extra compensation.

While superficially persuasive, this argument is untenable when considered in the context of the entire record. Contrary to the FEA's assertion, the district did not follow a consistent past practice of giving teachers additional compensation for a sixth hour of assigned classroom instruction. The record reveals that the agreement in effect in 1974–75 expressly provided additional compensation for a sixth period of classroom instruction. The provision for additional compensation was deleted from the subsequent collective bargaining agreement in exchange for an increase in base pay. While the 1979–81 collective bargaining agreement was in effect, the Foley school board denied a secondary teacher's grievance that he was entitled to additional compensation for an assigned sixth hour of classroom instruction. When these events are considered in conjunction with the school district's refusal of the FEA additional compensation proposal during the 1982–83 contract negotiations, it is apparent that the practice of paying additional compensation for a sixth period of classroom instruction had been changed long before the resolution of March 22, 1982, and that the FEA had notice of the scheduled addition of a sixth instructional period without additional compensation before the execution of the 1981–83 collective bargaining agreement.

▬ We similarly dispose of the FEA's second argument that the school district committed an unfair labor practice by unilaterally decreasing the elementary school teacher's preparation time from 50 minutes to 25 minutes during the student contact day. A decrease in the teacher's preparation time necessarily increases the teach-

ers' workloads and, hence, impacts on the conditions of their employment. *In re Maywood Board of Education,* 168 N.J.Super. 45, 401 A.2d 711 (App.Div.1979); *Chee-Craw Teachers Association v. Unified School District,* 225 Kan. 561, 593 P.2d 406 (1979). This is not to say, however, that the failure to negotiate the decrease was an unfair labor practice. When negotiations for the 1979–81 agreement reached an impasse, one of the issues arbitrated pursuant to Minn.Stat. § 179.72 (1982) was the FEA's demand for 50 continuous minutes of preparation time during the elementary school day. The arbitrator sustained the district's position that it need only schedule 50 minutes of preparation time over the course of the work day. If, in the light of the history of the negotiations on the subject, the 1982–83 elementary school schedule can be said to have embodied a "change," the teachers were notified of that change on delivery of the schedule at the end of May. While this was not formal notice, it was adequate to inform the FEA of the school district's intention. The FEA's subsequent execution of the 1981–83 bargaining agreement, together with its failure to make any attempt to discuss the proposed schedule for almost three months after notification and before implementation of the new schedule, was a clear waiver of the right to bargain.

The FEA's third unfair labor practice challenge is directed at the school district's decision to hire non-teachers to supervise secondary study hall. It is undisputed that prior to the 1982–83 school year, the past practice in Foley was for teachers to supervise study hall for one period per day. The record also reveals that the teachers did not learn of the decision to hire two non-teachers for study hall supervision until just prior to the commencement of the school year. Hence, there is no question the FEA did not waive its right to negotiate this change, and the major issue is whether the school district's decision was a mandatory subject of bargaining.

In *General Drivers Union Local 346 v. Independent School District No. 704,* 283 N.W.2d 524 (Minn.1979), we held it was an unfair labor practice for the school district to refuse to negotiate with the union its decision to contract out bus driving services. We rejected the argument that contracting out was an inherent managerial decision not subject to collective bargaining, and held that because it resulted in job termination the subject was a term and condition of employment. *Id.* at 527 n. 1. The same rationale is appropriate here.

The district did not decide to contract out study hall supervision duties until after it learned that Minn.R. 3500–3700, subpart 3 (1983), prohibited it from denying secondary school teachers a 50 minute preparation period during the student contact day. By implementing its decision to increase teaching assignments by hiring non-licensed persons to monitor study halls, the district avoided reinstating at least two of the teachers who had been placed on unrequested leave of absence. The decision had a direct adverse impact on the employment opportunities for these members of the bargaining unit. It allowed the school district to circumvent the bargaining rights of the FEA and deprived it of any opportunity to negotiate the reinstatement question.

Notwithstanding the adverse impact of its decision on the teachers, the school district maintains its decision to hire non-teachers was not an improper contracting out of bargaining unit work. Relying on the fact that the collective bargaining agreement limits the bargaining unit to individuals who fall within the PELRA definition of "teacher," Minn.Stat. § 179.63, subd. 13 (1982), the district argues that because state law does not require teacher licensure for study hall supervisors, study hall supervision does not fall within the bargaining unit's work.

■ The school district's argument confuses two related but distinct issues regarding collective bargaining units: unit description and unit jurisdiction. Whether or not study hall supervisors are included within the scope of membership in the bargaining unit is a question of unit description. We agree with the school district

that under the terms of the collective bargaining agreement, which includes only teachers within its membership, noncertified study hall supervisors are outside of the bargaining unit.

The issue, however, is not whether noncertified study hall supervisors are entitled to membership in the teachers' bargaining unit. Rather, the question is whether or not study hall supervision is included within the work assigned to members of the bargaining unit—a matter of unit work jurisdiction. Jurisdictional questions dealing with the assignment of work to unit members are subjects of mandatory negotiation. *See, Newspaper Printing Corp. v. N.L.R.B.*, 692 F.2d 615 (6th Cir. 1982); *Newspaper Printing Corp. v. N.L.R.B.*, 625 F.2d 956 (10th Cir.1980), cert. denied, 450 U.S. 911, 101 S.Ct. 1349, 67 L.Ed.2d 335 (1981); *Boeing Co. v. N.L.R.B.*, 581 F.2d 793 (9th Cir.1978). In short, the school district's unilateral action in assigning to persons who were not licensed teachers and, hence, not within the unit description study hall supervisory duties traditionally assigned to teacher members changed the unit work jurisdiction and, therefore, constituted an unfair labor practice.

We are also unpersuaded by the school district's reliance on *Minneapolis Association of Administrators and Consultants v. Minneapolis Special School District No. 1*, 311 N.W.2d 474 (Minn.1981), for the proposition that its decision to divest teachers of study hall supervision responsibilities was a matter of inherent managerial policy. *Minneapolis Association* involved the divestiture of administrative functions of supervisory personnel. It is inapposite here.

We conclude, as did the district court, that neither the assignment of a sixth period of secondary classroom instruction nor the rescheduling of elementary teacher preparation time constituted an unfair labor practice. We hold, however, that the assignment of study hall supervisory duties, work traditionally assigned to FEA members, is a subject of mandatory negotiation and that the school district's unilateral action in assigning such work to noncertified persons outside the unit description violated Minn.Stat. § 179.68, subd. 2(1) and (5) (1982).

Affirmed in part, reversed in part, and remanded for further proceedings in conformity with this opinion.