MINNESOTA TEAMSTERS PUBLIC AND LAW ENFORCEMENT EMPLOYEES UNION LOCAL 320, et al., Appellants,

v.

ANOKA COUNTY and Ralph W. Talbot, Sheriff of Anoka County, Respondents.

No. C9–84–1981.

Court of Appeals of Minnesota.

April 9, 1985.

 

Jeffrey W. Jacobs, Minneapolis, for appellants.

Dan Klint, Mark Maher, Asst. County Atty., Anoka, for respondents.

Considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellants appeal from a judgment of the district court dismissing their unfair labor practice claim. They contend that (1) respondents' discontinuance of a "take-home" car policy constituted an unfair labor practice under Minn.Stat. § 179.68,

subd. 2 (1982)[1]; (2) the union was not required to request negotiations prior to commencing this action for an unfair labor practice; and (3) it did not waive its rights to bargain. We affirm.

## FACTS

For several years, the Anoka County Sheriff's Department had a "take-home" car policy. From the late 1960's or early 1970's until January 2, 1981, each deputy assigned to one of three particular divisions was given a car for his use at work. The assigned vehicles could be used for transportation to and from work and, to a limited extent, for personal errands. Deputies regarded the use of the car as part of their compensation.

In August of 1980, the deputies were notified verbally that the "take-home" car policy would be discontinued effective January 2, 1981. A follow-up notice in writing was given in September of 1980. On January 2, 1981, the "take-home" car practice was discontinued and the county began a motor pool. Deputies were no longer assigned individual cars.

The Minnesota Teamsters Public and Law Enforcement Employees Union Local No. 320 is the exclusive bargaining representative for the deputies. A collective bargaining agreement expired on December 31, 1980. An agreement was signed by the parties on June 21, 1982 covering the period from January 1, 1981 through December 31, 1983. The "take-home" car policy was not an item of negotiations in the collective bargaining sessions. The matter of the "take-home" car policy was not made part of a final offer from either the union or Anoka County.

In April of 1982, appellants initiated this action claiming the county committed an unfair labor practice.

## ISSUE

Did appellants waive the right to meet and negotiate on the discontinuance of the "take-home" car practice?

## ANALYSIS

Appellants allege that the discontinuance of the "take-home" car policy constituted an unfair labor practice because the unilateral change amounted to a refusal to meet and negotiate a term and condition of employment under Minn.Stat. § 179.68, subd. 2(5) (1982). Respondents contend that the decision to discontinue the "take-home" car policy is an inherent managerial policy decision which is not subject to negotiation. They further contend appellants waived their right to negotiate and lost their right to apply to the courts for relief by failing to grieve the discontinuance.

We find it unnecessary to decide if the discontinuance of the "take-home" car policy constituted a term and condition of employment as claimed by appellants or an inherent managerial right as claimed by respondents. Even if we assume the "take-home" car policy constituted a term and condition of employment, we must affirm the trial court's summary judgment in favor of Anoka County because the union was not deprived of its right to meet and negotiate.

Public employers are obligated to meet and negotiate in good faith with their employees' exclusive representative on the terms and conditions of their employment. Minn.Stat. § 179.66, subd. 2 (1982)[2]. It is an unfair labor practice for a public employer to interfere with or restrain employees in their exercise of their rights or for an employer to refuse to meet and negotiate in good faith with the exclusive bargaining representatives of its employees. Minn.Stat. § 179.68, subd. 2(1) and (5) (1982). Unilateral changes by an employer in terms and conditions of employment are prima facie violations of its employees' col-

---

1. Minn.Stat. § 179.68, subd. 2 (1982) was repealed by Laws 1984, c. 462, s. 28, and is now found at Minn.Stat. § 179A.13, subd. 2 (1984).

2. Minn.Stat. § 179.66, subd. 2 (1982) was repealed by Laws 1984, c. 462, s. 28, and is now found at Minn.Stat. § 179A.07, subd. 2 (1984).

lective bargaining rights. *Foley Education Association v. Independent School District No. 51*, 353 N.W.2d 917, 920–21 (Minn.1984). However, a unilateral change is not per se an unfair labor practice. *Id.*, 353 N.W.2d at 921. If there has been a unilateral change,

the employer may successfully defend the action by demonstrating that there was not a bad faith refusal to bargain. The crucial inquiry in such event is whether the employer's unilateral action deprived the union of its right to negotiate a subject of mandatory bargaining. Hence, if the record demonstrates either that the union was in fact given an opportunity to bargain on the subject or that the collective bargaining agreement authorized the change or that the union waived its right to bargain, courts will not find bad faith.

*Id.*, 353 N.W.2d at 921 (citing *National Labor Relations Board v. Cone Mills Corp.*, 373 F.2d 595 (4th Cir.1967); R. Gorman, *Basic Text on Labor Law*, 400, 443–45 (1976). An employer may not be charged with an unfair labor practice in the absence of a demand for negotiation following the union's receipt of information of a planned change in a term or condition of employment. *Id.*, 353 N.W.2d at 921 (citing *Ogilvie v. Independent School District No. 341*, 329 N.W.2d 555 (Minn.1983)).

The presumption that an employer's unilateral change deprived the union of its right to bargain vanishes when the record as a whole reveals that the union never sought to bring the employer to the bargaining table.

*Id.*, 353 N.W.2d at 921 (citing *National Labor Relations Board v. Cone Mills Corp.*, 373 F.2d 595 (4th Cir.1967). The union's failure to demand bargaining will not constitute a waiver of the right to negotiate unless the record shows that the employer gave both adequate and timely notice of its intended action. *Foley*, 353 N.W.2d at 922. The notice must be sufficient under the circumstances to inform the union "a decision has been made, or that one is imminent, before that decision is implemented." *Id.* (quoting *General Drivers Union Local 346 v. Independent School District No. 704*, 283 N.W.2d 524, 528 (Minn.1979).

■ In this case, appellants had both adequate and timely notice and an opportunity to bargain. The deputies were told at least four months before the expiration of their contract that the county intended to discontinue the "take-home" car policy after the contract then in effect expired. A written notice was given at least three months in advance. The county discontinued the "take-home" car practice on January 2, 1981 and began a motor pool. The collective bargaining agreement which covered the period from January 1, 1981 to December 31, 1983 was not signed until June 21, 1982, eighteen months after the take-home car policy was discontinued and almost two years after the deputies were first notified that the policy would be discontinued.

The union had sufficient time before the change in policy to demand negotiations. It did not do so. The "take-home" car policy was not made an item of negotiations for the new contract and neither party included the matter in its final offer. The cars were not even discussed in negotiations. Under these circumstances, we are compelled to conclude that Anoka County's unilateral action did not deprive the union of its right to meet and negotiate and that the union waived its right to bargain. Since the union waived its right to bargain, we find no bad faith on the part of the employer and consequently no unfair labor practice.

### DECISION

Inasmuch as the union failed to demand negotiations, Anoka County's unilateral discontinuation of the "take-home" car policy did not deprive the union of its right to bargain.

Affirmed.