Bernice C. WHIPPLE, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NO. 621, Respondent, and School Service Employees Local No. 284, Respondents.

No. CO-87-2094.

Court of Appeals of Minnesota.

May 17, 1988.

James C. O'Neill, St. Paul, for Whipple.

Paul W. Hetland, Marie C. Skinner, Knutson, Flynn, Hetland & Deans, P.A., St. Paul, for Independent School Dist. No. 621.

Lawrence P. Zielke, Orlins & Brainerd, Richfield, for School Service Employees Local No. 284.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

LANSING, Judge.

Despite the school district's earlier assurances, appellant Bernice Whipple was not allowed to return to her secretarial position after a leave of absence. She brought this suit against the school district for promissory estoppel and against her union for breach of duty of fair representation. The jury returned a verdict for Whipple against the school district on the first claim, but in favor of the union on the second claim. Whipple appeals the trial court's denial of her motions for reinstatement, JNOV against the union, and attorney's fees; the school district appeals denial of its motion for JNOV or a new trial; and the union appeals denial of its requests for a finding that the school district and Whipple committed an unfair labor practice, and for attorney's fees. We affirm.

## FACTS

Bernice Whipple began work for Mounds View School District in 1971, and from 1972 until 1984 she was a full-time, year-round secretary to the principal of Highview Junior High School. During most of this time, Whipple belonged to Local 284 and served as its union steward for the negotiations of the 1983–84 and 1984–85 bargaining agreements between the union and the school district.

Bargaining agreements between the union and the school district cover a one-year period from July 1 through June 30 of the following year. Negotiations for the next year begin before each agreement expires, but often continue into the next term. The terms of the expired agreement remain in effect until the new agreement is finalized, but the new contract is customarily made retroactive to the expiration date of the prior agreement.

Section 7.1 of the 1983–84 agreement provided:

*Leaves of Absence.* There shall be no loss of job seniority in case of leave of absence for good cause, as determined by the employer.

In response to a request by school district personnel director Judith Curtis, the 1984–85 agreement was modified to provide:

Subd. A. *Return to Work.*
* * * An employee granted a leave of thirty (30) days or less shall return to their former position. If the leave extends beyond thirty (30) days but less than 180 days, the employee may displace the least senior employee in the same class. If no employee in the same class is less senior, the returning employee may displace the least senior employee in a lower class * * *.

Employees granted a leave of more than 180 days and less than one year shall have the right to the next opening in the same or lower class after posting has been completed.

In November 1984, while the old contract was still in effect, Whipple met with Curtis to request a leave of absence from January 1985 to June 30, 1985, to try out a different job. Curtis testified that she was responsible for exercising the district's discretion in arranging and recommending leaves and it was not unusual to meet without a union representative present. Curtis assured Whipple that she would be able to return to the same position after her leave and that the district would post the opening as a temporary position.

At the time of this meeting, the 1984–85 contract had not yet been finalized. Both Whipple and Curtis were involved in the contract negotiations and knew that the tentative agreement had adopted a new leave-of-absence provision. Neither Whipple nor Curtis mentioned the new provision or consulted with the union office. Curtis and Whipple both testified that they believed the 1983–84 contract governed the leave request.

On November 5, 1984, Whipple formally submitted her request for leave from December 3, 1984, to June 30, 1985. The school district approved the request the same day and the next day posted an opening in Whipple's position for a term described as "remainder of 1984–85 year (to fill in for leave of absence)."

The district sent copies of both postings to the union office, which did not respond. Whipple also notified Karl Landholm, the union's business agent, of the dates of her leave when she resigned as union steward. Whipple, as union steward, attended one more negotiation session after requesting leave, but did not attend the final negotiation session or the ratification meeting.

The school district and the union reached a final agreement on all contract issues, including the new leave-of-absence provision. After agreement had been reached, Curtis mentioned to Landholm that Whipple would be adversely affected by the new leave of absence clause and asked whether Whipple should be protected by a grandfather provision. Landholm stated that the entire contract was retroactive, and the mediator advised Curtis not to press the issue. Curtis was surprised at Landholm's position, because such exceptions were occasionally made. However, Landholm testified that he had not been involved in

negotiating any exceptions. The new provision, along with the rest of the contract, was made retroactive to July 1, 1984. The agreement was ratified and approved on January 7, 1985. Whipple learned of the ratification a short time later when she received her retroactive pay.

In February 1985 Whipple called Curtis to ask about the procedures to follow if she decided to return to her job. Curtis told her that the leave of absence language had changed and there could be a problem in regaining her job. When Whipple reminded her of her previous assurances, Curtis consulted Landholm, who maintained that the new agreement was retroactive and governed Whipple's situation. Nonetheless, Curtis told Whipple that she had consulted with the district's attorney and would do what she could to make an accommodation for her. According to Whipple, Curtis said she felt a commitment because of the prior assurances, and Whipple believed that things were all right. However, Whipple also testified that she did not believe Curtis had the power to ignore or violate an existing bargaining agreement.

In May, Whipple met with Curtis and on her advice sent a formal letter of intent to return dated June 3, 1985. The school board approved Whipple's return. However, on June 12, Curtis met with Whipple and told her that the person who had filled Whipple's job intended to file a grievance challenging removal. Because the school district believed it could not prevail on that grievance, they could not allow Whipple to return to her former position.

On June 17, Whipple contacted Landholm for the first time, explained the situation, and requested a grievance form. Landholm had previously been approached by Whipple's replacement and expressed the opinion that neither contract permitted Whipple to return. Landholm told the replacement that the union would support her grievance if Whipple returned. Landholm advised Whipple of this position by letter on June 18. Whipple then wrote to the school board, but on June 24 the school district rescinded its earlier approval of her return.

On August 9, the school district offered Whipple two ten-month clerical positions. She refused, having already consulted an attorney, and also refused another ten-month position offered in November 1985, after she commenced this suit. On December 3, 1985, the school district advised Whipple that her contractual right to reinstatement had expired and her employment was terminated.

At trial the parties agreed to reserve questions of reinstatement, attorney's fees and unfair labor practices for determination by the court. On the other claims, the jury found by special verdict that the school district had breached an agreement with Whipple, resulting in $1,858.20 in damages. After requesting reinstruction on the duty of fair representation, the jury found that the union had not breached that duty.

The trial court denied subsequent motions by Whipple for reinstatement and JNOV on her claim against the union, by the school district for JNOV or a new trial, by the union for a finding that the other parties had committed an unfair labor practice, and by all parties for attorney's fees. All parties appeal.

### ISSUES

1. Did the trial court err in denying the school district's motion for JNOV or a new trial on Whipple's promissory estoppel claim?

2. Did the trial court err in denying Whipple's request for reinstatement or a hearing to present evidence on future damages?

3. Did the trial court err in denying Whipple's motion for JNOV against the union on the fair representation issue?

4. Did the trial court err in denying the union's request for a finding that Whipple and the school district committed an unfair labor practice?

5. Did the trial court abuse its discretion in denying requests by the union and Whipple for attorney's fees?

## ANALYSIS

### I

■ The Minnesota Supreme Court has recognized the well-established federal labor principle that individual employment contracts that conflict with collective bargaining agreements are void. *Edelstein v. Duluth, Missabe & Iron Range Railway Co.*, 225 Minn. 508, 521–22, 31 N.W.2d 465, 473 (1948) (citing *J.I. Case Co. v. National Labor Relations Board*, 321 U.S. 332, 335, 64 S.Ct. 576, 579, 88 L.Ed. 762 (1944)). The statutory purpose of promoting collective bargaining does not permit individual contracts to subtract from the benefits of collective bargains or justify an employer's refusal to bargain collectively. *J.I. Case*, 321 U.S. at 337–38, 64 S.Ct. at 580–81.

Individual contracts are void only to the extent that they conflict with collective agreements or interfere with the principles of collective bargaining. *J.I. Case* "does not stand for the proposition that all individual employment contracts are subsumed into, or eliminated by, the collective bargaining agreement." *Caterpillar, Inc. v. Williams*, — U.S. —, —, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987). Unless it would amount to an unfair labor practice, employers may enter into contracts that do not conflict with the collective agreement or labor policy. *J.I. Case*, 321 U.S. at 339, 64 S.Ct. at 581; *see also Anderson v. Ford Motor Co.*, 803 F.2d 953, 958 n. 7 (8th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987); *Local Union No. 67 v. Duquesne Brewing Co.*, 354 F.Supp. 1033, 1034 (W.D.Pa.1973); *Roach–Reid Co. v. Hill*, 76 F.Supp. 749, 751 (W.D.Pa.1948); *but see Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir.1987). The collective agreement may specifically reserve some situations to be resolved by individual agreement. *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 347, 64 S.Ct. 582, 585, 88 L.Ed. 788 (1944); *Hendricks v. Airline Pilots Association International*, 696 F.2d 673, 675 (9th Cir.1983).

■ In this case, the 1983–84 agreement specifically reserved leaves of absence to the school district's discretion, with the granting and terms of such leaves to be determined between the district and individual employees. The jury was instructed that individual agreements which conflict with collective agreements are void, and must have concluded that agreeing to return Whipple to her position did not conflict with the collective agreement's provision on retention of seniority. That finding is supported by evidence, including the understanding of Whipple and Curtis that their arrangement was permissible under the 1983–84 contract. Because the arrangement was arguably permissible under the 1983–84 contract and the union failed to object after notice, it did not amount to an unfair labor practice and was therefore enforceable under that contract.

■ On the other hand, the leave arrangement clearly conflicts with the more restrictive retroactive terms of the 1984–85 collective agreement. However, the school district cannot rely on a subsequent agreement to defeat a claim of promissory estoppel when both parties to the collective agreement had notice of the promise and Whipple's reliance on it. *See Hass v. Darigold Dairy Products Co.*, 751 F.2d 1096, 1100 (9th Cir.1985) (although seniority rights can be retroactively revised by collective bargaining, promissory estoppel is appropriate when both parties to collective bargaining were aware of plaintiff's reliance on assurances which conflicted with new agreement). Because the leave arrangement was not invalid at the time it was made, it is not rendered void by a subsequent bargaining agreement entered into despite notice of Whipple's reliance on the arrangement. The jury's verdict that the school district breached the arrangement was supported by evidence and not contrary to the law.

### II

Damages for promissory estoppel "may be limited as justice requires." *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn.1981). Whipple argues that justice requires reinstatement because rein-

statement is "the very essence of" her claim against the school district. Although she concedes that she would not be entitled to reinstatement under the 1984–85 collective agreement, Whipple argues that the 1983–84 contract under which her leave was granted applies to allow reinstatement.

■ The 1984–85 agreement specifically superseded "[a]ny and all prior agreements," and the trial court correctly concluded that Whipple could not rely on the previous agreement to support reinstatement. Although the school district is estopped from asserting the invalidity of its promise, specific enforcement would conflict with the principles of collective bargaining and another person's rights under the governing collective agreement. In view of this conflict, the trial court properly refused Whipple's request for reinstatement.

■ The court also did not abuse its discretion in refusing to allow Whipple to submit evidence of future damages based on her asserted "work expectancy" of 21 more years. Whipple did not attempt to prove future damages at trial and offered no authority to support her request to re-open the judgment for a post-trial hearing. Because she was not employed with the school district for a specified term, these additional damages may be speculative. Damages which are too remote and speculative cannot be recovered. *Jackson v. Reiling*, 311 Minn. 562, 563, 249 N.W.2d 896, 897 (1977), *cert. denied*, 432 U.S. 906, 97 S.Ct. 2951, 53 L.Ed.2d 1078 (1977). Finally, Whipple's damages may have been caused in part by her failure to take a 10–month position from which she could have moved into a 12–month position. In these circumstances, there was no abuse of discretion in limiting damages to those proved at trial. *See Grouse*, 306 N.W.2d at 116 (when promised employment could have been terminated at any time, damages are properly measured not by what plaintiff would have earned, but by what he lost by acting in reliance on the promise).

III

Whipple claims that the jury's verdict in favor of the union was manifestly contrary to the evidence, and the trial court therefore abused its discretion in denying her motion for JNOV on the fair representation issue. She relies on the following facts to support her argument: (1) although the union was informed that Whipple's position was posted as temporary, Landholm "spurned" the district's attempts to make an exception; (2) Landholm failed to tell Whipple that the new contract would adversely affect her; (3) Landholm knew that Whipple, in her capacity as union steward, had previously surveyed union members on their satisfaction with Landholm's performance as chief negotiator; (4) in April 1985 Landholm told Whipple's replacement that he would support her grievance if Whipple returned; (5) in June 1985 Landholm failed to send Whipple a grievance form and told her it would be impossible to support her grievance; and (6) Landholm maintained that Whipple had no right to her old job back even under the 83–84 contract.

■ The duty of fair representation is a corollary to the union's right to exclusive representation of individual employees. *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967); *Eisen v. State, Department of Public Welfare*, 352 N.W.2d 731, 735 (Minn.1984). As such, the duty applies only to matters in which the union is the exclusive representative of an employee. *Tchida v. Police Officers' Federation of Minneapolis*, 375 N.W.2d 856, 858–59 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn.Dec. 30, 1985). As to these matters, a union violates its duty when its conduct is arbitrary, discriminatory, or in bad faith. *Vaca*, 386 U.S. at 178, 87 S.Ct. at 910.

■ As illustrated by the jury's request for reinstruction on that issue, reasonable minds could differ on whether the union violated its duty of fair representation. While we might have decided differently, the union's failure to agree to a grandfather clause which would exempt Whipple from the general retroactivity of the contract was not so clearly arbitrary as to

compel a finding of breach. Landholm testified that Curtis mentioned Whipple's situation only very briefly at the end of a negotiating session and that he refused to accommodate her because he did not want to redraft the contract and was concerned that special provisions would make an already difficult contract even harder to get ratified.

The jury was entitled to find on this evidence that no breach occurred. Landholm was also responsible for representing Whipple's replacement and was faced with a potentially difficult ratification process. Whipple did not request that he consider her circumstances in negotiating or keep her informed. Although Whipple suggests that Landholm may have been improperly motivated by her survey of his job performance, there was no evidence that the survey created hostility. To the contrary, both Landholm and Whipple testified that the survey created no hard feelings.

To the extent that the union had any duty at all toward Whipple to defend a grievance based on an individual agreement, the record does not require a finding that it breached that duty. Whipple's agreement went beyond the 1983–84 contract's provision for the retention of seniority, and her grievance, if successful, would have conflicted with her replacement's rights under the 1984–85 contract. While Whipple obviously disagrees with Landholm's belief that her leave was improper under either contract, his belief supports the conclusion that his failure to pursue her grievance was not arbitrary. *See Humphrey v. Moore,* 375 U.S. 335, 349, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964), *reh'g denied,* 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655 (1964) (duty not breached merely because union opposes one member's position and supports another's); *Johnson v. Air Line Pilots in Service of Northwest Airlines, Inc.,* 650 F.2d 133, 137 (8th Cir.1981), *cert. denied,* 454 U.S. 1063, 102 S.Ct. 614, 70 L.Ed.2d 601 (1981) (when union must choose between conflicting claims, finding of unfair representation requires clear showing of bad faith); *Tedford v. Peabody Coal Co.,* 533 F.2d 952, 957–58 (5th Cir.1976) (union not clearly arbitrary in interpreting leave of absence provision to guarantee seniority but not a return to the same job).

## IV

The parties agreed to submit the question of unfair labor practices for decision by the court, which refused the union's request for a finding that Whipple and the school district committed an unfair labor practice. This refusal should not be reversed unless clearly erroneous. Minn.R. Civ.P. 52.01.

Under Minn.Stat. § 179A.13, subd. 2(5) (1984), an employer commits an unfair labor practice by refusing to meet and negotiate with its employees' exclusive representative. Federal courts have concluded that the duty to bargain implies a prohibition against bargaining with individual employees on terms of employment. *See, e.g., Medo Photo Supply Corp. v. N.L.R.B.,* 321 U.S. 678, 683–84, 64 S.Ct. 830, 832–33, 88 L.Ed. 1007 (1944). Similarly, an employer's unilateral changes in the terms of employment may violate the duty to bargain. *See N.L.R.B. v. Katz,* 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962); *Foley Education Association v. Independent School District No. 51,* 353 N.W.2d 917, 920–21 (Minn.1984).

The union initially argued that the November 1984 agreement between Whipple and Curtis constituted an unfair labor practice. The trial court correctly rejected this claim. The 1983–84 contract did give the district discretion in deciding the terms of individual leaves, union officials were not ordinarily involved in arranging or approving such leaves, and the agreement was not clearly inappropriate. There was also evidence that the union received copies of the temporary postings, and thus had notice of the arrangement, about one month before Whipple took her leave. Assuming that the arrangement constituted a unilateral change in the terms of employment beyond those authorized by contract, the union waived its right to bargain on the issue by failing to demand negotiation after receiving notice of the

change. *See Foley,* 353 N.W.2d at 921; *Minnesota Teamsters Public v. Anoka County,* 365 N.W.2d 372, 375 (Minn.Ct. App.1985).

 The union also argues that it was an unfair labor practice for Curtis to continue to attempt to assist Whipple despite the union's position that the 1983–84 contract was retroactive. This argument appears to be founded on the idea that by-passing the union and talking to Whipple directly violated the school district's duty to bargain in good faith. *Cf. General Electric Co. and International Union of Electrical, Radio and Machine Workers, AFL–CIO,* 150 N.L.R.B. 192, 266, 57 L.R.R. M. 1491, 1497–98 (1964) (strike truce proposal communicated directly to local employees without regard to national union acceptance was an unlawful attempt to by-pass the national union by dealing directly with a segment of its membership).

The trial court disagreed, and its decision was not clearly erroneous. The 1983–84 contract reserved the granting of leaves to the school district's discretion, Curtis made a commitment to Whipple which was argu-ably permitted under that contract and, despite notice, the union did not object. Curtis' subsequent position did not change and thus constituted neither a unilateral change nor a new negotiation with Whip-ple. When problems arose both during and after negotiation of the new contract, Cur-tis sought the union's help in resolving them. When the untenability of her assur-ances became apparent in view of the un-ion's position, Curtis backed down. Since the union failed to object to the arrange-ment in November or accommodate it in December, the trial court did not clearly err in determining that Curtis' subsequent attempts to keep her promise did not con-stitute unfair labor practices.

## V

In Minnesota, attorney's fees are not awardable in the absence of a specific con-tractual or statutory authorization. *Cherne Industrial, Inc. v. Grounds and Associates Inc.,* 278 N.W.2d 81, 96 (Minn. 1979). No party asserted a claim so un-founded as to require reversal of the trial court's determination that bad faith attor-neys' fees under Minn.Stat. § 549.21 were not warranted. We do not consider the merits of Whipple's and the union's re-quests for fees as damages in the fair representation and unfair labor practice claims, because the issues on which those claims are predicated were resolved against them.

### DECISION

Affirmed.