**Duane M. FREIER, Respondent,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 197, Appellant,**

**Russell D. Anderson, et al., Defendants,**

**James Stanton, et al., Appellants,**

**Joyce D. Walker, et al., Appellants.**

**No. C8–84–501.**

Court of Appeals of Minnesota.

Oct. 23, 1984.

Harry A. Sieben, Jr., David W.H. Jorstad, Grose, Von Holtum, Sieben & Schmidt, Ltd., Minneapolis, for respondent.

James E. Knutson, David S. Bartel, Peterson, Knutson, Flynn & Hetland, P.A., St. Paul, for appellant Independent School Dist. No. 197.

Robert Weinstine, Mark Briol, Winthrop, Weinstine & Sexton, St. Paul, for appellants Tourek, DeBlauw and Stanton.

William L. Killion, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, for appellants Peter Nasvik and Joyce Walker.

Heard, considered, and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

WOZNIAK, Judge.

Respondent Freier commenced this defamation action against appellants school district and school board members arising out of a January 8, 1981, decision and order issued and published by the school board, discharging respondent Freier from his employment as a teacher. The school district and school board members moved for summary judgment, claiming that publication of its decision to discharge Freier was cloaked in an absolute privilege. The trial court denied the school district's motion finding appellants were protected only by a qualified privilege, but agreed that the question was important and doubtful, and certified the question to this court pursuant to Rule 103.03(h), Minn.R.App.P. We reverse.

## FACTS

Duane M. Freier, a gym teacher at Pilot Knob Elementary School, was dismissed from his position in January 1981. The discharge proceeding was brought pursuant to Minn.Stat. § 125.12, subd. 8 (1980). Freier had been accused of improper touching of students and insubordination.

The school board's dismissal reversed the findings of a hearing examiner, and subsequently was overturned in Dakota County District Court (October 1981). The order reinstated Freier, with back pay. The district court's decision was summarily affirmed by the Minnesota Supreme Court in October 1982.

In January of 1983, Freier brought suit against the school district and the school board members, asserting claims for defamation, intentional infliction of emotional

distress, and negligent infliction of emotional distress.

The decision and order published, the alleged defamatory writing, recounted the series of events which led to Freier's dismissal. It detailed the letter from the superintendent of schools directing Freier to refrain from touching students and instructing him to use a uniform disciplinary procedure for all of the children in his classes. Also, it stated that Freier had willingly and knowingly disregarded this mandate and had touched fifth grade girls in the upper chest area. Also, it put forth how he had spanked a first grade boy for failing to perform an exercise, knowing the boy had been suffering pain and lameness in his legs.

The decision concluded:

Based upon Findings of Fact 3, 4 and 5, this Board concludes that Duane M. Freier *willfully and knowingly violated the condition contained in the letter of February 22, 1980,* addressed to him from the Superintendent of Schools, that he *"cease immediately the practice of touching children or having them touch you,* except in those instances where it is necessary as part of the instructional process in physical education or there is a danger of injury to the student that requires action on your part",* and he was therefore insubordinate and engaged in conduct unbecoming a teacher which requires his immediate removal from his classroom and other duties; based upon Finding of Fact 5, this Board concludes that Duane M. Freier *willfully and knowingly violated the condition of the letter of February 22, 1980* which admonished him to "use a uniform disciplinary procedure for all of the children you teach", and that he was therefore insubordinate and engaged in conduct unbecoming a teacher which requires his immediate removal from his classroom and other duties; and based upon Finding of Fact 6, this Board concludes that Duane M. Freier engaged in conduct unbecoming a teacher which re-

quires his immediate removal from his classroom and other duties.

(Emphasis added.)

All defendants moved for summary judgment, which was granted in favor of some of the board members. Remaining in this litigation as defendants are the school district and the five school board members who voted in favor of discharging Freier.

In their motion, defendants argued that the decision to publish the decision and order discharging Freier was protected by an absolute privilege. The district court disagreed, finding that they were only protected by a qualified privilege, yet certified the question as being important and doubtful. Consequently, the school district and the five individual school board members appeal from an order denying them summary judgment pursuant to Rule 103.03(h) of the Minnesota Rules of Civil Appellate Procedure. We reverse.

## ISSUE

CERTIFIED QUESTION: Whether a school district and school board members are protected by an absolute privilege to publish a decision to discharge a teacher pursuant to Minn.Stat. § 125.12.

## ANALYSIS

Appellants argue that the publication of their decision to discharge Freier is protected by an absolute privilege grounded in three different contexts.

First, they argue they were entitled to an absolute judicial privilege because the school board was acting as a quasi-judicial tribunal when it reached and published its decision to discharge Freier.

Second, appellants argue they were entitled to an absolute privilege to follow the requirements of law. (The school board and school district were required to make their decision to discharge Freier public pursuant to Minn.Stat. § 125.12, subd. 10 (1980), Minn.Stat. § 123.33, subd. 11 (1980), and the Minnesota Data Practices Act, Minn.Stat. § 15.1692 (1980).)

Finally, appellants argue they were entitled to an absolute official privilege to carry out discretionary functions of public bodies, in accordance with Minnesota case law and Minn.Stat. § 466.03, subd. 6 (1980).

The lower court found that the quasi-judicial nature of a teacher discharge proceeding does not give automatic rise to a grant of absolute immunity, and, consequently, "The question of malice, bad faith or other action by the school board defendants in the instant case are questions to be resolved by the trier of fact."

Further, the court found that appellants failed to comply with all requirements of applicable Minnesota law, while engaged in discharge proceedings, namely:

1. The school board chose not to follow the recommended decision of the hearing officer, and
2. Appellant's decision was not based upon substantial and competent evidence in the record,

thereby forfeiting any cloak of absolute immunity they may have had.

Finally, the court found the publication was not "discretionary" and immunity under Minn.Stat. § 466.03, subd. 6 is not applicable.

## I.

■ We hold that a school district and school board members are protected by an absolute privilege to publish a decision to discharge a teacher pursuant to Minn.Stat. § 125.12.

## II.

This is a case of first impression. It is undisputed that the Minnesota Supreme Court has, in past decisions, characterized teacher discharge proceedings as "quasi-judicial" in nature. However, it has not directly addressed the question of whether the absolute privilege with which it cloaked participants in other quasi-judicial proceedings would be available to a school district and school board members under the circumstances of the instant case.

### A. *Application of Minn.Stat. § 125.12*

■ Minn.Stat. § 125.12, the continuing contract law, guarantees continued employment to Minnesota public school teachers who have completed their probationary period of employment. Once a teacher acquires continuing contract status, the teacher's employment can only be terminated in accordance with the grounds and procedures set forth in Minn.Stat. § 125.12. *See* Minn.Stat. § 125.12, subd. 4 (1982). The current discharge procedures are identical to the 1980 statute governing this decision.

In this case, the school board gave Freier written notice that it proposed to discharge him, effective immediately, under the statute. Also in accordance with the statute, Freier requested a hearing, which was granted by the school board. *See* Minn. Stat. § 125.12, subds. 4, 8.

■ Once a teacher requests a hearing and the hearing is completed, the school board must issue its written decision and order. According to the statute:

After the hearing, the board *shall* issue a written decision and order.

Minn.Stat. § 125.12, subd. 10 (emphasis added).

It is the publication of this written decision which Freier alleges to have resulted in defamation and emotional distress.

### B. *The Absolute Judicial Privilege*

All parties are in agreement that matters of teacher discharge under Section 125.12 are "quasi-judicial" proceedings. At issue is whether the absolute privilege of judicial immunity applies to these quasi-judicial proceedings.

In *Matthis v. Kennedy,* 243 Minn. 219, 67 N.W.2d 413 (1954), the supreme court extended the absolute judicial privilege to quasi-judicial proceedings:

In judicial proceedings the privilege is not restricted to trials but *includes every proceeding of a judicial nature if the hearing is before a competent court or before a tribunal or officer clothed with judicial or even quasi-judicial powers.* The general rule in this country is that,

with certain recognized exceptions, defamatory matter published in the due course of a judicial proceeding is absolutely privileged and will not support a civil action for defamation although made maliciously and with knowledge of its falsehood. It extends to the protection of the judge, the jury, the party or parties, counsel and witnesses.

*Id.* at 224, 67 N.W.2d at 417 (emphasis added).

In *Jenson v. Olson*, 273 Minn. 390, 141 N.W.2d 488 (1966), the court extended the absolute judicial privilege to a quasi-judicial hearing concerning a city employee's discharge before the Minneapolis Civil Service Commission, a non-elected board.

The *Jenson* court described the characteristics of the quasi-judicial proceeding to which the absolute judicial privilege applies:

the body has the power to issue subpoenas;

it can administer oaths;

it can order the production of books, records, and papers;

it is required to put its charges in writing, and to provide the charged party with an opportunity to be heard; and

its determination is reviewable in district court by certiorari. *Id.* at 392–393, 141 N.W.2d 490.

These characteristics are identical with a section 125.12 proceeding. The *Jenson* court further held that whether a tribunal is judicial is not a question of fact, but one of law.

■ Accordingly, any action taken to discharge a teacher under Minn.Stat. § 125.12 is a quasi-judicial proceeding to which the absolute judicial privilege will apply.

■ The immunity is total and absolute, and it will apply even if the defamatory statements were made with malice or were known to be false. *See Johnson v. Dirkswager*, 315 N.W.2d 215, 220 (Minn.1982); *Jenson v. Olson*, 273 Minn. at 393, 141 N.W.2d at 490.

In *Johnson v. Dirkswager*, 315 N.W.2d 215 (Minn.1982), the court stated:

We have held that participants in judicial and legislative proceedings are entitled to an absolute privilege, a grant of total immunity for false and defamatory statements regardless of the nature or intent of the speaker.

*Id.* at 220.

■ Under these principles, the decision and order of the school board is an absolutely privileged communication. Therefore, neither the members of the school board nor the school district itself can be held liable in defamation for any communication contained in the decision.

## C. *Communications*

■ Communications incidental to judicial proceedings are absolutely privileged. Statements incidental to judicial proceedings, whether defamatory or not, are absolutely privileged. The judicial privilege extends to the tribunal that is responsible for making the decision.

A judge or other officer performing a judicial function is absolutely privileged to publish defamatory matter in the performance of the function if the publication has some relation to the matter before him.

Restatement (2d) of Torts § 585 (1977). Here, the school board was the tribunal that performed the judicial function.

## D. *Absolute Privilege to Follow the Requirements of the Law*

■ Public bodies have an absolute privilege to follow the requirements of law. It is well established:

One who is required by law to publish defamatory matter is absolutely privileged to publish it.

Restatement (2d) of Torts Section 592A (1977); *Johnson v. Dirkswager*, 315 N.W.2d 215, 223 (Minn.1982).

■ Once the school board voted to discharge Freier, it was required to publish that decision by three different laws: Minn.Stat. § 125.12, subd. 10, Minn.Stat.

§ 123.33, subd. 11, and the Minnesota Data Practices Act.

1. Minn.Stat. § 125.12, subd. 10: "After the hearing, the board *shall* issue a written decision and order." (Emphasis added.) Under Minn.Stat. § 125.12, subd. 10, a school board's decision *"shall* include findings of fact." (Emphasis added.) Since the decision had to be in writing, appellants are protected by an absolute privilege to follow the requirements of law.

2. Minn.Stat. § 123.33, subd. 11, states:

The board *shall* cause its official proceedings to be published once in the official newspaper of the district. Such publication shall be made within 30 days of the meeting at which such proceedings occurred.

(Emphasis added.) It would be illegal for the school board to have kept its decision to discharge Freier a secret from the public.

3. The Minnesota Data Practices Act states in pertinent part:

[T]he following personnel data on current and former employees of a state agency, * * * statewide system or political subdivision and members of advisory boards or commissions is public; * * * the status of any complaints or charges against the employee, whether or not the complaint or charge resulted in a disciplinary action; and the final disposition of any disciplinary action and supporting documentation; work location; a work telephone number; badge number; and, city and county of residence.

Minn.Stat. § 15.1692, subd. 2 (1980). *See* Minn.Stat. § 13.43, subd. 2 (1982).

The Minnesota Data Privacy Act states clearly that the school district personnel had a duty to disclose all material, and that the public has access to each item disclosed in the course of the discharge proceeding. The Act has been interpreted by the Minnesota State Supreme Court as the legislature's attempt to balance the public's right to know with an individual's right to privacy. *Johnson v. Dirkswager*, 315 N.W.2d at 221.

In that case, Johnson had been accused of "sexual improprieties" with patients at the state hospitals. Johnson was terminated and defendant Dirkswager (a non-elected official), after completion of the investigation, orally disclosed the contents of Johnson's termination letter to a reporter. It did not involve a defamatory statement made in the course of a quasi-judicial proceeding. It involved a statement made to the press. Nevertheless, in a footnote, the court stated that, under Minn.Stat. § 15.-1692, subd. 2 (1980), clearly the letter of termination would have been public data. *Id.* at 222, n. 9.

The reasoning of the court recognizes the public's fundamental need to know about the conduct of public matters. In *Johnson*, the problem was the potential of "sexual improprieties" with patients at a state hospital. In the case at hand, the public has an absolute right of access to knowledge about alleged misconduct by a teacher. The teacher's mode of vindication is to challenge the findings against him by certiorari.

People differ in their judgment about the seriousness of the conduct of Freier. The board felt the conduct was sufficient cause to terminate him; both reviewing courts reached an opposing conclusion. The result of that process was to vindicate Freier, and to return him to the classroom with full back pay.

As stated in *Johnson:*

We think it bears repeating that Johnson has been exonerated of all charges against him by not just one but two triers of fact. This is his vindication. He has been reinstated to his position with back pay. In yielding his right to recover something more by way of defamation damages, he yields to the needs of the free, democratic society to be apprised of the conduct of the public business by its public officials.

*Johnson*, 315 N.W.2d at 223.

In the case at hand, identical considerations are at play: Freier's claim of defamation is met full force by the need of the public to know what is occurring in the

classrooms and by the statutory duty of the school board to report its findings in full to the public; the mode of challenge to the school board's findings was available to plaintiff and was used; he was reinstated with back pay; he was returned to his employment; his compensation can go no further.

### E. *The Absolute Official Privilege*

School board members and school districts, like most government officials, are entitled to an absolute official privilege in the exercise of discretionary school district functions. Minn.Stat. § 466.03, subd. 6 (1982). The decision to discharge Freier involved the exercise of a discretionary act on the part of the school board. Because school districts are charged with the duty, in the exercise of their discretion, to carry out this function, appellants enjoy an absolute privilege of immunity from liability.

Freier, however, claims that appellants are not absolutely immune under Minn. Stat. § 466.03, subd. 6. He reasons that the physical act of publishing the written discharge decision was "ministerial," not "discretionary." This analysis is misplaced.

The discretionary act was the school board's actual decision which followed a three-day hearing. Only after discretion was exercised and the decision reached did the school board have to perform the statutorily-mandated "ministerial" act of putting the decision down on paper and making it available to the public.

A "discretionary" act of a public body "is one which requires a balancing of complex and competing factors." *Ostendorf v. Kenyon*, 347 N.W.2d 834, 837 (Minn.Ct. App.1984).

Certainly a school board's decision whether or not to discharge a teacher falls within the realm of discretionary functions and duties. Appellants therefore have an absolute statutory immunity from liability under Minn.Stat. § 466.03, subd. 6 (1982).

### III.

The trial court found appellants were protected only by a qualified privilege which presented questions of fact for trial. In making this conclusion, the court erroneously relied on federal cases, and erroneously determined that appellant did not follow the requirements of law.

### A. *Federal Civil Rights Cases*

The trial court discussed *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), *Hostrop v. Board of Junior College District No. 515*, 523 F.2d 569 (7th Cir.1975), and *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), as authority for the proposition that appellants are entitled only to a qualified privilege. All three cases predate *Johnson v. Dirkswager;* not one involves a common law action for defamation or emotional distress. Thus, these federal civil rights decisions are not authority governing the action now before us.

### B. *Appellants Did Not Follow The Requirements Of Law.*

The court found that the school district and school board members did not follow the requirements of law because: (1) the school board chose not to follow the recommended decision of the hearing officer, and (2) the school board's decision was not based upon substantial and competent evidence in the record.

(1) Neither Minn.Stat. § 125.12 nor any other law requires school boards to follow a hearing officer's decision. School boards must hire hearing officers, and hearing officers must make findings and conclusions that are available for the school board to consider when the school board reaches its decision. *Schmidt v. Independent School District No. 1*, 349 N.W.2d 563 (Minn.Ct.App.1984). But it is the school board, not the hearing officer, that is charged with reaching the decision following the hearing. Minn.Stat. § 125.-12, subds. 4, 10. The law does not require a school board to follow the recommended decision of the hearing officer. Therefore, although the school board chose not to

follow the decision of the hearing officer following Freier's hearing, when doing so the school board did not fail to follow the requirements of law. It was within its discretion to reach a different decision, subject to Freier's right to obtain judicial review.[1]

(2) The trial court held that the school board failed to follow the requirements of Minn.Stat. § 125.12, subd. 9, because its decision was not based upon substantial and competent evidence in the record. This is not a procedural requirement. This is a substantive legal requirement that guides both courts and school boards in these proceedings and lies at the very heart of a school board's judicial discretion. Certainly lay school board members cannot be certain in all cases whether a particular decision is based upon substantial and competent evidence in the record. Even judges cannot always agree what constitutes substantial and competent evidence. In *Kroll v. Independent School District No. 593*, 304 N.W.2d 338 (Minn. 1981), the school board discharged a teacher for holding pins under a student's arms, and the district court affirmed. But the supreme court reversed, and found the record lacked substantial evidence to support that finding. *Id.* at 342–343. In *Whaley v. Anoka-Hennepin Independent School District No. 11*, 325 N.W.2d 128 (Minn.1982), the school board terminated a teacher and the district court reversed because the evidence was not sufficient. But the supreme court reversed the district court and upheld the school board because the evidence was legally sufficient. *Id.* at 131. Thus, reasonable minds may differ as to the application of this evidentiary test.

The fact that a school board's decision to discharge a teacher may not have been based on substantial and competent evidence cannot be the factor that determines whether a school district and school board members have an absolute privilege or a qualified privilege. If it were to be the determining factor, then a school board's power to reach a judicial or quasi-judicial determination under Minn.Stat. § 125.12 would be impaired by the risk of liability for a tort action.

The requirement of the law that the school board issue a written decision and order is enough to invoke the defense of absolute privilege. The trial court's reasoning would remove from an elected school board the power to decide wrongly, and result in the school board being absolutely immune from liability if its decision was affirmed on appeal, but not if its decision was reversed. The rule of absolute privilege is not to be so narrowly construed.

*Conclusion*

Public policy requires absolute privilege for the public good. School boards have a duty to investigate allegations of an employee's improper behavior toward school children, and they have a duty to initiate discharge proceedings when, in their discretion, the school board members believe such action is appropriate. This issue is especially important when allegations of sexual misconduct with children are involved. This duty is for the benefit of the public and for the school children.

If there is no absolute immunity protecting school board members from liability in defamation for their decision to discharge a teacher, school board members will have a strong incentive to ignore complaints about employees, in order to avoid any risk of exposure to liability. Only the most courageous and the most foolhardy school board members would ever vote in favor of discharge. This would chill the rights of the public, and hamper the ability of a school

---

1. The role of hearing officers in Minn.Stat. § 125.12 proceedings is nearly identical to the role of hearing examiners in contested case proceedings under Minnesota's Administrative Procedure Act. Under the Act, hearing examiners are required to issue a report containing their findings, conclusions, and recommendations. Minn.Stat. § 14.50 (1982). Following the hearing examiner's report, the appropriate state agency must then render its final decision. Minn.Stat. § 14.61 (1982).

district to protect its children. The children would then suffer the greatest risk.

It is true that mistakes can be made, and that lay board members might vote in favor of discharge even though the evidence might ultimately be found by the court to be legally insufficient. But teachers already have a remedy through judicial review and reinstatement with back pay. This remedy allows a teacher to clear his name and to be compensated for all economic hardship. Therefore, there is no justification for limiting board members' exposure to a qualified immunity under Minnesota's statutory scheme.

## DECISION

The question certified to us is: Whether a school district and school board members are protected by an absolute privilege to publish a decision to discharge a teacher pursuant to Minn.Stat. § 125.12.

We answer the question as follows: A school district and school board members are absolutely privileged in conducting teacher discharge proceedings and publishing the decision and order.

Accordingly, since there is no factual dispute, summary judgment in favor of the school board members and the school district on the ground of absolute privilege is granted.

We further hold that defamation and emotional distress are merely two different labels for the same alleged tort in this case, and that the doctrine of absolute privilege applies with equal force to both claims.

Reversed. Summary judgment granted.