In the Matter of The Proposed Placement of Gregory HAGEN on Unrequested Leave of Absence.

No. C2–90–1801.

Court of Appeals of Minnesota.

Feb. 5, 1991.

Review Denied April 18, 1991.

Harley M. Ogata, Christina L. Clark, Roger L. Barrett, Minnesota Educ. Ass'n, St. Paul, for appellant.

John C. Lervick, Robert C. Swenson, Swenson, Grover, Lervick, Syverson & Battey, Ltd., Alexandria, for respondent.

Considered and decided by RANDALL, P.J., and CRIPPEN and FLEMING, JJ.

## OPINION

RANDALL, Judge.

Relator, a continuing contract teacher, appeals his placement on unrequested leave of absence. He contends he was deprived of a meaningful hearing by the alleged introduction of new evidence at a school board meeting held subsequent to an independent hearing held pursuant to Minn. Stat. § 125.12, subd. 4 (1988). He also contends that the findings of fact issued by the school board pursuant to Minn.Stat. § 125.12, subd. 10 (1988) were insufficient, and that the record lacks substantial evidence to support the school board's determination that there were no reasonable and practical realignments of staff available to the board to preserve his full-time position. We affirm.

## FACTS

Independent School District # 736, Belgrade–Elrosa, Minnesota, and Independent School District # 737, Brooten, Minnesota, are parties to an inter-district cooperative agreement. Pursuant to this agreement, each district maintains its own elementary school, but the secondary schools were consolidated with grades 7–9 in Belgrade–Elrosa and grades 10–12 in Brooten.

In the spring of 1990, the school boards and the superintendent were considering budget problems experienced by the Brooten school district. One of the cost reduction proposals was the elimination of an industrial arts teaching position. The position was held by Gregory Hagen, relator, a full-time tenured teacher.

On March 12, 1990, Brooten school board passed a resolution proposing to place Hagen on an unrequested leave of absence pursuant to Minn.Stat. § 125.12, subd. 6b (1988) on the grounds of "discontinuance of position, lack of pupils, [and] financial limitations." Hagen requested a hearing before an independent hearing officer in accordance with Minn.Stat. § 125.12, subd. 4. The hearing took place on March 27, 1990.

At the hearing, Hagen argued for a realignment of the districts' staff which would preserve his position and reduce or elimi-nate a probationary teacher. The essence of Hagen's argument was to reassign senior teachers with physical education qualifications to classes then being taught by a probationary teacher which would indirectly open industrial arts classes which Hagen could instruct.

On April 24, 1990, the hearing officer issued his findings of fact, conclusions, and recommendations. His recommendation was that the school board direct the superintendent and secondary principals to "reconsider the possibilities of realignment."

On May 14, 1990, at a public school board meeting, the superintendent and secondary principals reiterated to the school board why realignment was not reasonable or practical. Thereafter, the school board passed a resolution placing Hagen on unrequested leave of absence. The resolution did not contain findings of fact as required by Minn.Stat. § 125.12, subd. 10. Hagen was served written notice of the board's resolution May 15, 1990.

The school board met on June 25, 1990, and adopted findings of fact relating to their May 14, 1990, resolution placing Hagen on unrequested leave. The board issued those findings of fact on June 26, 1990. On August 9, 1990, Hagen appealed the action of the school board pursuant to Minn.R.Civ.App.P. 115.

## ISSUES

1. Did relator receive a meaningful opportunity to challenge his placement on unrequested leave of absence?

2. Did the school board provide sufficient findings of fact pursuant to Minn. Stat. § 125.12, subd. 10 in placing relator on unrequested leave of absence?

3. Did the record contain substantial evidence to support the respondent's decision that there were no reasonable and practical realignments available to protect the full-time position of relator?

## ANALYSIS

*Standard of review.*

The standard of review which this court applies in review of school board actions is settled.

A school board acts in its administrative capacity when it places a teacher on an unrequested leave of absence. * * * "The nature of judicial review in a certiorari proceeding under Minn.Stat. § 125.12 is limited." .* * * A board's decision to place a teacher on an unrequested leave of absence may be set aside only if the decision is fraudulent, arbitrary, unreasonable, unsupported by substantial evidence, not within the school board's jurisdiction, or based on an erroneous theory of law. * * * Substantial evidence is "evidence upon which reasonable minds can rely in arriving at a conclusion." * * * To determine whether substantial evidence is present, a court must examine the record as a whole. * * *

*Destache v. Independent School District No. 832,* 434 N.W.2d 270, 271 (Minn.App. 1989) (citations omitted). *See also Atwood v. Independent School District No. 57, Foley,* 354 N.W.2d 9, .11–12 (Minn.1984).

## I.

*Meaningful hearing.*

Hagen first contends that he was not afforded a "meaningful hearing" on the possibility of staff realignments in order to maintain his full-time position. Hagen argues that the school board meeting of May 14, 1990, resulted in the school board taking action based on new testimony and evidence not presented at the March 27, 1990, hearing. A review of the record indicates the May 14, 1990, school board meeting did not deprive Hagen of a meaningful hearing.

Hagen requested a hearing pursuant to Minn.Stat. § 125.12, subd. 4, and that hearing was held before an independent hearing officer on March 27, 1990. At the hearing, the board presented witnesses and Hagen was permitted extensive cross-examination. Hagen did not present any evidence or testimony of his own. The hearing officer then issued his findings of fact, conclusions and recommendation. The hearing officer's recommendation was for the school board to "direct the superintendent and principals to carefully reconsider the possi-

bilities of realignment with particular emphasis on the suggested scenario wherein [a probationary teacher's] physical education responsibilities would be filled by more senior teachers."

At the May 14, 1990, school board meeting, the recommendation of the hearing officer was implemented. The superintendent and principals presented the same information to show realignment was not reasonable or practical. This was not a new position. It was a restatement of what had been presented and considered at the March 27, 1990, hearing. Hagen contends that a written synopsis of the principals and superintendent's information attached to the school board's findings of fact issued June 26, 1990, constitutes new evidence. However, that attachment was just a restatement of the previously presented and discussed information. We find no new evidence presented to the school board at its May 14, 1990, meeting.

Hagen also contends that he was excluded from the May 14, 1990, school board meeting and was therefore denied a meaningful hearing. The minutes of the meeting indicate that the meeting was open to the public and Hagen attended. There is nothing in the record that indicates Hagen desired to address the board and nothing prevented Hagen from presenting any additional matters of his own choosing.

■ The March 27, 1990, hearing addressed the issue of realignment relevant to Hagen. The hearing officer's. recommendation was to have the superintendent and principals carefully reconsider possible realignments. That is what they did. We note that even had the hearing officer specifically recommended realigning the staff, the school board did not have to accept that recommendation.

[I]t is the school board, not the hearing officer, that is charged with reaching the decision following the hearing. Minn. Stat. § 125.12, subds. 4, 10. The law does not require a school board to follow the recommended decision of the hearing officer. * * * It was within its discretion to reach a different decision, *subject*

to [relator's] right to obtain judicial review.

*Freier v. Independent School District No. 197,* 356 N.W.2d 724, 731–32 (Minn.App. 1984) (emphasis added).

Where no new evidence was submitted at the May 14, 1990, school board meeting, we find Hagen was afforded a fair hearing. Further, he was not precluded by the school board's placing him on unrequested leave from challenging that action as not supported by substantial evidence upon writ of certiorari.

## II.

### *The school board issued sufficient findings of fact.*

■ The school board's placement of Hagen on unrequested leave is next challenged as not complying with Minn.Stat. § 125.12, subd. 10. Hagen contends first that the school board's action was not supported by timely "findings of fact" and second that the "findings of fact" were insufficient. Hagen's first challenge of untimeliness is unpersuasive.

[W]hen a school board has in good faith attempted to comply with the requirements of section 125.12 and has served a copy of its resolution placing a tenured teacher on unrequested leave of absence prior to June 1, if its resolution is ineffective for lack of sufficient findings of fact, such findings may be supplied after June 1 and the resolution will then be effective as of that date.

*Herfindahl v. Independent School Dist. No. 126, Clara City,* 325 N.W.2d 36, 39 (Minn.1982). There was no new evidence incorporated into the findings of fact, nor is there any evidence in the record of a lack of good faith on the part of the school board. On May 15, 1990, Hagen was provided a copy of the school board's resolution placing him on unrequested leave of absence, and when the school board rendered its findings of fact on June 26, 1990, under *Herfindahl,* the resolution became effective on June 1, 1990.

■ Hagen bases his second challenge as to the sufficiency of the findings on an argument that the findings are a mere restatement of the original and underlying grounds used to initiate the consideration of placing him on unrequested leave. The underlying ground for placing Hagen on unrequested leave was stipulated to at the March 27, 1990, hearing as being financial limitations of the district.

We recognize that:

[t]he findings of the board must be written findings which not only set out the specific charge or charges upon which the school board based its decision but also those basic facts developed in the evidence which in the board's judgment supported the charge or charges. * * * The mere restatement of the alleged deficiencies as findings of fact * * * is insufficient to satisfy the requirement that findings of fact be made with particularity that substantiates the alleged deficiencies.

*Ganyo v. Independent School Dist. 832,* 311 N.W.2d 497, 500 n. 3 (Minn.1981) (citations omitted). Hagen does not challenge the basic premise that because of financial issues within I.S.D. # 737 someone would likely have to be placed on unrequested leave. His contention is simply that a realignment of staff would make the teacher subject to layoff someone less senior than himself. The school board, in its findings of fact, went beyond relying merely on financial limitations and specifically addressed the question of realignment.

In its May 14, 1990, resolution, the school board took notice of the administration's consideration of possible realignments. Then in its June 26, 1990, findings of fact, the school board found that realignment would not be in the best interests of the district because it would create other problems involving transportation, absence of cost reduction, and limitations on assignments and flexibility. This court will not hear the case de novo or substitute its findings for those of the board. *Id.* at 500. There is sufficient evidence in the record to allow this court to consider whether the decision not to realign staff in order to preserve Hagen's full-time position is sup-

ported by substantial evidence. The school board's findings of fact were sufficient.

## III.

*Substantial evidence.*

■ The real issue in this case is whether the school board's decision not to realign staff so as to preserve Hagen's full-time position was supported by substantial evidence. Hagen believes that the school board acted solely in support of its financial motivation to cut costs without making reasonable realignments required by law.

A financial savings motivation by a school board is one of several proper elements. "While absolute financial necessity need not be shown, * * * more than mere financial convenience must be demonstrated." *Bates v. Independent School Dist. No. 482, Little Falls,* 379 N.W.2d 239, 242 (Minn.App.1986) (citation omitted). Here, the school board had other considerations beside financial savings on which it based its decision.

A realignment in this case would be disruptive. Arneson is the senior industrial arts teacher with a physical education license. He and Hagen are both in the secondary system. The most likely probationary teacher to be affected by a realignment is teaching in the elementary system and would be required to give up classes to Arneson. The commingling of teachers from both secondary and elementary systems and the fact that realignment would involve adjustments in the high schools and the elementary system would affect school flexibility in scheduling and assignments.

A review of the record shows substantial evidence to support the board's findings that a realignment would cause transportation problems, flexibility problems, and a loss of financial savings. The school board presented sufficient evidence at the March 27, 1990, hearing as to transportation problems. The transportation requirements from realignment could require Hagen and Arneson to drive between schools for only one class. The travel time would impact on scheduling and assignment flexibility.

The school board also found that realignment would adversely affect cost reduction. The record provides sufficient evidence to support this conclusion. Hagen's full-time salary would cost the district more than the salary of a part-time teacher or probationary teacher. The district has taken the necessary and reasonable cost reduction actions to meet budget requirements while maintaining the most beneficial and complete curriculum possible for the benefit of the students.

> While it is impossible to articulate a precise definition or test by which these difficult staff reductions may be decided, it is possible to enumerate the relevant factors that must be considered in each case, namely, the teacher's length of service, the duration and scope of the teacher's license, the school district's needs reflecting the welfare of the students and the public, and the ease of reassignment or realignment or [sic] course schedules to facilitate retention of the most senior teachers. (Citation omitted).

*Westgard v. Independent School Dist. No. 745,* 400 N.W.2d 341, 345–46 (Minn.App. 1987), *pet. for rev. denied* (Minn. Apr. 17, 1987). The above listed factors support the school board's action.

While Hagen has twelve years of service with the Brooten district, he can only be employed in industrial arts if he is to be employed full-time. Arneson has not recently utilized his physical education license, and student needs in physical education would be better met by retaining an experienced physical education instructor. His lack of qualifications to teach other classes limits possibilities for realignment. There is sufficient evidence in the record to support the school district's position that a realignment favoring Hagen could impact unreasonably on other teachers as well as both districts' elementary systems.

The record supports the school district's decision to place Gregory Hagen on unrequested leave of absence.

## DECISION

Hagen received a meaningful hearing under the provisions of Minn.Stat. § 125.12,

subd. 4. A hearing before an impartial hearing officer was held on March 27, 1990. The hearing officer made recommendations to the school board, which were implemented on May 14, 1990, at a public school board meeting, and no new evidence was submitted to the board at that time. The findings of fact issued by the school board pursuant to Minn.Stat. § 125.12, subd. 10, were sufficient. Finally, there was substantial evidence in the record as a whole to support the school board's placing Hagen on unrequested leave of absence.

Affirmed.

CRIPPEN, Judge (dissenting).

Because relator was not placed on leave according to law, I respectfully dissent. School districts should anticipate that unrequested leave will predictably be upset in circumstances like these.

The ingredients of relator's plea are simple and compelling:

1. Leave placements of continuing contract teachers must be in the reverse order of seniority, provided that retained teachers are qualified for their assignments. Minn.Stat. § 125.12, subd. 6b (1990). Relator is a continuing contract teacher employed by respondent in 1978.

2. As part of the statutory mandate to retain a senior teacher, the school district is obligated to employ "practical and reasonable" realignment of staff. *Strand v. Special School Dist. No. 1*, 392 N.W.2d 881, 886 (Minn.1986). Here it is undisputed that an industrial arts colleague of relator also is qualified for physical education instruction now given by a staff that includes a recently employed probationary teacher.

3. The school district does not know (and we cannot know) whether a realignment of the kind relator suggests is practical or reasonable. The district has never denied nor refuted the hearing officer's conclusions, following a March 1990 hearing, that implementation of the proposed realignment appears "very possible" but that the record includes too little evidence to establish whether or not the realignment is practical and reasonable. Moreover, the hearing examiner concluded that the district had numerous other cost cutting options in the event the alternative leave proposal did not save exactly as much as a leave for relator.

4. Following the March hearing, the district recorded a finding that the proposed realignment was not practical or reasonable. However, this finding was in spite of the district's position, clearly declared in its appellate brief, that "no new evidence" was received after the examiner's hearing. Given the unchallenged conclusions of the examiner, there is no support for the later findings of the district.

5. Adding yet another basis for reinstatement of relator, he was denied a fundamental right to participate in a May 1990 proceeding of the district board where its realignment decision was concluded. *See* Minn.Stat. § 125.12, subds. 3, 4, and 6b(j) (1990) (notice and hearing rights preceding leave decisions). Recognition of this error is further compelled by the hearing examiner's singular recommendation that the realignment proposal be reconsidered. Concluding that a supplementary hearing was not feasible, evidently because of its self-imposed problems in timely concluding a lawful leave proceeding, the district finalized its leave action in a hearing where relator was not permitted to participate and was given no notice to accommodate participation of counsel and the submission of evidence and argument. Finally, further enlarging the process error here, deficiencies of the record on the realignment issue make it impossible for the board to issue findings "based upon competent evidence," the documentation required by Minn.Stat. § 125.12, subd. 10 (1990).

Because of our decision here, relator understandably might be cynical regarding benefits promised by public law and the judicial process. He has lost tenured public employment without demonstrated cause or lawful process.

I respectfully dissent.