Roger VILLARREAL, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT # 659, NORTHFIELD, MN, Respondent.

No. C6–93–634.

Court of Appeals of Minnesota.

Aug. 24, 1993.

Review Granted Oct. 19, 1993.

Karin E. Peterson, Gregg M. Corwin, Gregg M. Corwin & Associates, St. Louis Park, for appellant.

Richard J. Thomas, Geraghty, O'Loughlin & Kenney, St. Paul, for respondent.

Christina L. Clark, Harley M. Ogata, Roger L. Barrett, Rebecca H. Hamblin, Minnesota Educ. Ass'n, St. Paul, for amicus curiae Minnesota Educ. Ass'n.

Considered and decided by PARKER, P.J., and LANSING and SHORT, JJ.

## OPINION

LANSING, Judge.

At the conclusion of a teacher termination proceeding pursuant to Minn.Stat. § 125.12, the discharged teacher brought a civil action under the Minnesota Human Rights Act alleging discrimination based on race. The district court, relying on the doctrine of judicial immunity, granted summary judgment for the school district. We reverse and remand.

### FACTS

Roger Villarreal was a Spanish teacher in the Northfield School District for sixteen years. Villarreal is Mexican–American and alleges that at the time of his discharge he was the only minority teacher employed in the school district.

Following an incident between Villarreal and a student he supervised in a study hall, the school district decided to discharge Villarreal. The decision was made at an October meeting attended by the superintendent, the principal, the assistant principal, and the director of personnel. A formal resolution of

discharge was passed at the school board's November 12, 1990, meeting.

Villarreal exercised his right to a hearing pursuant to Minn.Stat. § 125.12, subd. 9 (1990). A hearing officer appointed by the school district conducted a hearing and recommended that Villarreal be terminated. The school board adopted the hearing officer's conclusions and dismissed Villarreal by resolution at its May 7, 1991, meeting. Villarreal appealed to this court and the termination was affirmed in an unpublished opinion. *In re Villarreal*, No. C1–91–1072, 1991 WL 245253 (Minn.App. Nov. 26, 1991).

In May 1991 Villarreal brought this action against the school district alleging racial discrimination in violation of the Minnesota Human Rights Act. The school district moved for summary judgment on the alternative bases that the school district is immune from suit on issues relating to teacher termination proceedings or that Villarreal's discrimination claim is collaterally estopped by the termination proceeding. Relying on the judicial immunity theory, the district court granted the school district's summary judgment motion.

## ISSUES

I. Is the school district protected by judicial immunity from a human rights action brought by a teacher discharged pursuant to the statutory termination procedures?

II. Does the statutory termination proceeding collaterally estop a discharged teacher from bringing an action alleging discrimination under the Minnesota Human Rights Act?

## ANALYSIS

### I

Judicial immunity shields judges from liability for "acts done in the exercise of judicial authority." *Linder v. Foster*, 209 Minn. 43, 45, 295 N.W. 299, 300 (1940). Such immunity is founded on the principle that judicial officers, in exercising their authority, must be free to act upon their own convictions without apprehension of personal consequences. *Bradley v. Fisher*, 80 U.S. 335, 347, 20 L.Ed. 646 (1871).

Judicial immunity extends to persons who are integral parts of the judicial process, including prosecutors, counsel, and witnesses. *Sloper v. Dodge*, 426 N.W.2d 478, 479 (Minn.App.1988) (citing *Briscoe v. La-Hue*, 460 U.S. 325, 334–35, 103 S.Ct. 1108, 1115–16, 75 L.Ed.2d 96 (1983), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983)). Immunity likewise extends beyond the courtroom to include "every proceeding of a judicial nature if the hearing is before a competent court or before a tribunal or officer clothed with judicial or even quasi-judicial powers." *Matthis v. Kennedy*, 243 Minn. 219, 224, 67 N.W.2d 413, 417 (1954). Thus, a "quasi-judicial" proceeding to discharge a teacher under Minn.Stat. § 125.12 is a proceeding to which judicial immunity attaches. *Freier v. Independent Sch. Dist. No. 197*, 356 N.W.2d 724, 729 (Minn.App.1984).

Villarreal, relying on *State v. City of Mounds View*, 498 N.W.2d 503 (Minn.App. 1993), *pet. for rev. granted* (Minn. June 9, 1993), asserts that judicial immunity is not available as a defense in a proceeding under the Minnesota Human Rights Act. In *Mounds View* we held that the common law doctrine of official immunity does not bar a claim of racial discrimination brought against police officers. *Id.* at 507–08. But the immunity that attaches to an adjudicatory proceeding entails considerations separate from official immunity.

Unlike official immunity we find nothing in the application of judicial immunity that conflicts or is inconsistent with the Human Rights Act. There is therefore no basis for a presumption that the Legislature intended through this Act to abrogate the fundamental and longstanding legal principle of judicial immunity absent a clear statement to that effect. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, ––– U.S. –––, –––, 111 S.Ct. 2166, 2169–70, 115 L.Ed.2d 96 (1991) (when a common law principle is well-established, courts may presume the Legislature passed a statute with the expectation that the principle will apply except when a statutory purpose to the contrary is evident); *Pierson v. Ray*, 386 U.S. 547, 554–55, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967) (judicial immuni-

ty is so well-established that the Legislature must specifically abolish the doctrine before judges will face liability under civil rights statute for their judicial acts); *Hoppe v. Klapperich,* 224 Minn. 224, 233–34, 28 N.W.2d 780, 787 (1947) (judicial immunity is a fundamental principle of English and American jurisprudence).

But determining that judicial immunity is available as a defense does not lead us to the school district's position that it is absolutely immune for any action taken by a school district in the discharge of a tenured teacher. This argument relies primarily on *Freier.* The essential holding of *Freier* is that neither the school board nor the school district can be held liable in defamation for statements in an order discharging a teacher pursuant to the statutory termination proceedings. Our issue is more complex. Villarreal's claims of discriminatory termination may have been actionable only after the school board completed the termination proceedings, but the claims arose from the district's earlier conduct in deciding to discharge him and initiating the discharge proceeding.

In the proceedings established by Minn. Stat. § 125.12, the school district "occupies the rather incongruous tripartite role of 'prosecutor, judge, and jury.'" *Graham v. Special Sch. Dist. No. 1,* 472 N.W.2d 114, 118 (Minn.1991) (quoting *Kroll v. Independent Sch. Dist. No. 593,* 304 N.W.2d 338, 345 (Minn.1981)). For purposes of this litigation, however, the school district functions in an additional capacity as an employer subject to the strictures of the Human Rights Act. *See* Minn.Stat. § 363.01, subds. 17, 28 (1990).

In applying judicial immunity to an entity that has multiple capacities, the United States Supreme Court has taken a "functional approach." Under this analysis, the Court

examine[s] the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions.

*Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988).

In *Forrester,* the Court used the functional analysis to conclude that a state court judge does not have absolute immunity from a damage suit under 42 U.S.C. § 1983 for his decision to demote and dismiss a court employee. Although hiring, retaining, and supervising employees is an important aspect of overseeing an efficient adjudicative system, the decision to demote and discharge an employee is not itself judicial or adjudicative. *Id.* at 229, 108 S.Ct. at 545; *see also Gutierrez v. Municipal Ct. of S.E. Judicial Dist.,* 838 F.2d 1031, 1047 (9th Cir.1988) (in promulgating allegedly discriminatory personnel rule, municipal judges acted in their capacity as an employer and are not entitled to assert the defense of legislative or absolute immunity).

The teacher termination process divides into at least three distinct stages: the first stage encompasses the school district's initial decision to discharge a teacher, which is prior to the adjudicatory procedures of Minn. Stat. § 125.12; the second stage comprises the actual hearing; and the third stage involves the posthearing determination by the school board to either retain or discharge the teacher.

■ Villarreal was suspended on October 16, 1990. Several days later the principal, assistant principal, director of personnel, and the school superintendent, met and determined that Villarreal should be dismissed. These actions are within the discretion of the school district and do not involve any adjudicatory function. This is an employer function which is not protected by judicial immunity. To accept the school district's argument that these actions are protected by judicial immunity would retroactively immunize activity performed entirely outside the scope of the quasi-judicial process. Neither caselaw nor common sense justifies so broad an application of the judicial immunity doctrine.

■ Once a teacher has been notified of a proposed termination, the teacher has ten days to request a hearing before the board prior to the district's final action. Minn.Stat. § 125.12, subd. 8 (1990). Once these hearing procedures have been invoked, the school board's role shifts to that of quasi-judicial

officer performing an adjudicatory function, and immunity attaches. *See Graham,* 472 N.W.2d at 116 (noting that in a teacher termination proceeding, the school board acts in a quasi-judicial capacity). Consequently, if Villarreal's civil rights claim was based solely on the conduct or statements of the school district arising out of the hearing procedures, it could be barred by judicial immunity.

■ In the third stage, when the final decision is made to retain or discharge the teacher, the district, through its board, appears to be acting in both a quasi-judicial and administrative capacity. In this blended role, the school district is mandated by statute to issue a written decision at the hearing's conclusion to terminate or retain the teacher. Courts generally recognize an absolute privilege to follow the requirements of the law. *See Johnson v. Dirkswager,* 315 N.W.2d 215, 223 (Minn.1982); *Freier,* 356 N.W.2d at 729. However, none of the materials submitted by Villarreal in support of his cause of action relate to conduct occurring at the hearing or the school board's meeting accepting the hearing officer's recommendations except as it relates to the finalization of the decision to terminate.

■ The legislative purpose behind Minn. Stat. § 125.12 is the protection of tenured teachers' contract rights. *See Kroll,* 304 N.W.2d at 344. It would be an ironic application of this protection to hold that the statute operates to prohibit any claims against a district for discriminatory termination. Moreover, it would create inconsistent results. A teacher could bring a Human Rights Act claim for an unlawful failure to hire or for any range of disciplinary action except discharge. If a teacher chose to forego the hearing process, the teacher would not be barred from bringing a discrimination claim despite accepting the discharge.

In light of these considerations, we conclude that school districts are not absolutely immune from a Human Rights Act claim for discriminatory discharge when teachers are terminated after Minn.Stat. § 125.12 hearings have been held. On these facts, because Villarreal bases his claim of racial discrimination on his employer's alleged conduct occurring outside the adjudicatory context, absolute judicial immunity is inapplicable.

## II

■ Alternatively, the district argues that the factual conclusions of the hearing examiner collaterally estop Villarreal from establishing a prima facie case of discrimination.[1] After presentation of testimony, the hearing examiner made extensive factual findings and ultimately recommended that Villarreal be immediately discharged. The school district now argues that Villarreal is collaterally estopped from rearguing his qualification to teach and therefore cannot establish a prima facie claim of discrimination. *See Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 442 (Minn.1983).

*Graham* established that the procedural and due process termination safeguards built into teacher termination proceedings will allow findings of misconduct to be binding "for at least some causes of action." 472 N.W.2d at 119. *Graham* involved a terminated teacher who brought claims against a school district for defamation, retaliatory discharge, and deprivation of rights of free speech. The Supreme Court outlined the five factors that must be met before collateral estoppel can apply: 1) the issue must be identical to that raised in the prior adjudication; 2) the issue must have been necessary to the adjudication and properly before the agency; 3) the determination must be final and subject to judicial review; 4) the party against whom it is asserted must have been a party or in privity with a party to the determination; and 5)

1. Because the district court failed to address collateral estoppel, and the school district did not file a notice of review, Villarreal argues that this issue is not properly before this court on appeal. A respondent, however, is not required to file a conditional notice of review to preserve an alternative theory. *See* Minn.R.Civ.App.P. 106; *Hoyt Inv. v. Bloomington Commerce & Trade Ctr. Ass'n,* 418 N.W.2d 173, 175 (Minn.1988) (notice

of review not required when the trial court has not ruled on a litigated question). We note, however, that appellate review is ordinarily limited to issues decided by the trial court. *Interfund Corp. v. O'Byrne,* 462 N.W.2d 86, 90 (Minn.App. 1990). Nonetheless, in the interest of judicial economy and because the issue was fully argued in the trial court and briefed on appeal, we address the collateral estoppel question.

have had a full and fair opportunity to be heard on the adjudication issue. *Id.* at 116.

Applying these factors the court concluded that collateral estoppel appropriately precluded the defamation action because the alleged defamatory statements were established to be true in the termination proceeding. *Id.* at 119. The court, however, declined to apply collateral estoppel to the issues of retaliatory discharge and free speech violations because the teacher had not been afforded a "full and fair" hearing with respect to these claims. *Id.* at 116. To decide the issue of retaliatory discharge at the termination proceeding would be "manifestly self-serving" because

> the school board is being asked to judge not just the conduct of the employee it is proposing to discharge, but the lawfulness of the district's own conduct as the employer. It is being asked to judge whether it has, itself, engaged in unlawful discrimination against the employee.

*Id.*

 The question narrows to whether the issue to be precluded bears more resemblance to the school board's finding of teacher misconduct (to which the *Graham* court applied collateral estoppel) or to the board's examination of its own conduct for employment law violations. *Harford v. University of Minn.,* 494 N.W.2d 903, 908 (Minn.App. 1993), *pet. for rev. denied* (Minn. Mar. 30, 1993). We conclude that Villarreal's claim of racial discrimination under the Human Rights Act raises precisely the same issues which prevented the application of collateral estoppel to the retaliatory discharge and free speech claims in *Graham.* Retaliatory discharge and racial discrimination are both considered unlawful employment practices under the Act and both also involve the three-step *McDonnell Douglas* test. *See Hubbard,* 330 N.W.2d at 441–42; *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In addition even if there existed some valid grounds for terminating a teacher who is a member of a protected class, there remains a "mixed motive" issue which requires a factfinder to determine whether membership in the protected class was a "discernible, dis-

criminating, and causative factor" in the discharge. *Anderson v. Hunter, Keith, Marshall & Co.,* 417 N.W.2d 619, 626–27 (Minn. 1988). A teacher termination hearing is not well suited to address factually complex "mixed motive" questions. *See Graham,* 472 N.W.2d at 119.

Collaterally estopping Villarreal's human rights claim based on the termination proceeding's factual findings would essentially allow the school board to be the ultimate adjudicator of the lawfulness of its own conduct as an employer. The school board's decision on termination may limit the remedies and make reinstatement unavailable, but it does not debar the action. *See id.* at 119 (for purposes of the termination, the teacher is duly discharged). For the reasons stated in *Graham,* Villarreal is not collaterally estopped from pursuing his human rights action.

### DECISION

We reverse the trial court's determination that the school district was absolutely immune from Villarreal's Human Rights Act claim. We also conclude that collateral estoppel does not bar Villarreal from bringing a discrimination action and remand to the trial court for proceedings on the merits.

**Reversed and remanded.**

SHORT, Judge (dissenting).

I respectfully dissent. As part of his prima facie case of racial discrimination, Villarreal must show that he is qualified for the position from which he was discharged. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (setting forth elements of prima facie case of discrimination); *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 442 (Minn. 1983) (same). Villarreal is collaterally estopped from proving that issue because he was found to be unqualified to teach in the proceeding under Minn.Stat. § 125.12, subd. 9 (1990). *See Graham v. Special School Dist. No. 1,* 472 N.W.2d 114, 117, 119 (1991) (doctrine of collateral estoppel prevents employee from relitigating factual issues adjudicated in a school termination proceeding).

After a three-day hearing, the independent hearing examiner found Villarreal's violent

and explosive behavior constituted conduct unbecoming a teacher, gross inefficiency, and willful neglect of duty. The school district adopted these findings and immediately discharged Villarreal. Unlike a retaliatory discharge claim, proof of racial discrimination involves producing evidence of the plaintiff's qualifications. *Compare Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 572 (Minn.1987) (retaliatory discharge claim requires proof by plaintiff that discharge was motivated by good faith refusal to violate law) *and* Minn.Stat. § 181.932, subd. 1(a) (1990) (prohibiting employers from discharging employees for reporting employer's violations) *with Hubbard*, 330 N.W.2d at 442 (discrimination claim requires plaintiff to prove he or she is qualified for job). The issue of Villarreal's qualification to teach was the precise issue before the hearing examiner, and Villarreal was given a full and fair opportunity to be heard on that issue. *See Graham*, 472 N.W.2d at 116 (elements of collateral estoppel). Because collateral estoppel applies to prevent Villarreal from proving an essential element of his discrimination case, I would affirm the trial court's grant of summary judgment in favor of the school district. *See id.* at 119 (in interest of judicial economy, findings of teacher misconduct should be binding for some causes of action because of elaborate procedural and due process safeguards built into teacher termination proceedings).