Thomas **BESTE** and David Kriska, **Relators,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 697, Respondent.**

No. CX–86–1217.

Court of Appeals of Minnesota.

Dec. 30, 1986.

William F. Garberg, Peterson, Engberg & Peterson, Minneapolis, for relators.

Scott C. Neff, Neff & Lager, Virginia, for respondent.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal by Writ of Certiorari from the decision of the respondent school board, placing relators on unrequested leave of absence (ULA). On April 22, 1986, respondent proposed to place both relators on ULA. Relators timely requested a teacher hearing, pursuant to Minn.Stat. § 125.12, subd. 4 (1984). Such hearing was held on May 21, 1986. On May 28, 1986, the hearing examiner issued his proposed findings of fact and recommendation, which awarded relators positions for the 1986–1987 school year. The school board, on May 29, 1986, adopted the hearing examiner's recommendations, with certain modifications, and placed relators on ULA. By Writ filed July 22, 1986, relators appealed the May 29, 1986, school board decision placing them on ULA.

## FACTS

This case arises out of an agreement between respondent and the Gilbert School District to merge and cooperate on the secondary level, beginning in the 1986–87 school year. As a result of this agreement, a master seniority list covering all teachers in both districts was created, and the least senior teachers were proposed to be placed on ULA.

Relators, both teachers of industrial arts, were two of the teachers placed on ULA by respondent. Relator Beste was originally placed on ULA, but was subsequently recalled to full-time employment and the appeal as to him is now moot. Relator Kriska was placed on ULA full-time and was not offered a position for the 1986–87 school year. A teacher with less seniority than either of relators was retained to occupy a computer teaching position.

Five teachers placed on ULA eventually requested a hearing, although three later waived their right to a hearing and did not appear. The hearing proceeded on May 21, 1986, before a hearing examiner. The only ground alleged as the basis for relator's layoff was discontinuance of position.

On May 28, 1986, the hearing examiner submitted his proposed findings, conclusions, and recommendation, awarding relators a .4 gifted teaching position and any study halls or other supervisory hours to which they would, by seniority, have rights. Citing *Strand v. Special School Dist. No. 1*, 361 N.W.2d 69 (Minn.Ct.App.1985), the hearing examiner rejected relators' right to "bump" a less senior teacher assigned to a computer position, saying it would be unreasonable and impractical. Respondent school board adopted the hearing examiner's findings with some modifications. First, respondent did not give relators the .4 gifted teaching position. Second, respondent did not give relators available study hall or supervisory hours but, instead, placed them on ULA. Respondent adopted the hearing examiner's recommendation rejecting relators' right to bump a less senior computer teacher but deleted any reference to the *Strand* case from

their decision. Relators appeal the respondent's decisions on these matters.

## ISSUES

1. Did respondent fail to establish as justification for relator's ULA placement the ground of discontinuance of position?

2. Was respondent's decision to place relator Kriska on ULA rather than assigning him to positions which were available, and either vacant or held by less senior personnel based on an erroneous theory of law?

3. Did respondent act arbitrarily in failing to adopt the hearing examiner's recommendations and failing to provide findings and reasoning for not adopting the recommendations?

## ANALYSIS

### *Standard of Review*

■ A board of education, when deciding whether to hire or terminate a teacher, is acting in an administrative capacity. Therefore, a reviewing court can set aside that decision only "when the determination of the administrative agency is fraudulent, arbitrary, unreasonable, or not supported by substantial evidence on the record, not within its jurisdiction, or based on an erroneous theory of law." *Foesch v. Independent School Dist. No. 646*, 300 Minn. 478, 485, 223 N.W.2d 371, 375 (1974).

### I.

Relator contends that respondent failed to prove as justification for placing relator on ULA, the ground of discontinuance of position. *See* Minn.Stat. § 125.12, subd. 6b. Relator correctly notes that discontinuance of position has never been specifically defined by the Minnesota courts, and invites this court to define it as eliminating a given curriculum. However, the Minnesota Supreme Court has specifically rejected the proposal that discontinuance of position be equated with elimination of a position from the curriculum. *Hendrickson v. Independent School Dist. No. 319*,

303 Minn. 423, 425–26, 228 N.W.2d 126, 128 (1975).

■ Minn.Stat. § 125.12, subd. 10 states that the decision of the board "shall include findings of fact based upon competent evidence in the record * * *." Reading this subdivision together with subd. 6b, which governs teacher placement on ULA, it is clear that discontinuance of position is a valid ground for placing a teacher on ULA, but it must be proved by competent evidence. In *Hendrickson*, the court defined "position" as "a teacher at the level and in the curricula for which he is certified," and held that this is the position that must be shown to be discontinued by competent evidence. 303 Minn. at 425–26, 228 N.W.2d at 128.

■ Here the school board provided much evidence showing that the industrial arts position held by relator was being discontinued. The hearing examiner found that due to the school mergers, the industrial arts program had been reduced substantially. This reduction in available teaching hours resulted in the respondent's decision to place the least senior industrial arts teachers, including relator, on ULA. Competent evidence having been produced to support the ground for placement on ULA, respondent fully complied with the statute.

## II.

Relator Kriska contends that respondent acted under an erroneous theory of law by ignoring statutory rights and requirements for teacher layoffs and placing him on ULA. Minn.Stat. § 125.12, subd. 6b governs procedures for placing teachers on ULA, and provides in pertinent part:

Subd. 6b. In placing teachers on unrequested leave, the board shall be governed by the following provisions:

\* \* \* \* \* \*

(b) Teachers who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are licensed in the inverse order in which they were employed by the school district. In the case of equal seniority, the order in which teachers who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are licensed shall be negotiable; \* \* \*. *Id.*

This statute provides that seniority among appropriately licensed teachers determines the order of bumping, realignment or layoff. "Bumping" is the direct exercise of seniority by one about to lose a job on a less senior teacher. In a bump situation, an appropriately licensed more senior teacher directly takes a less senior teacher's job. "Realignment" involves reassignment of a more senior teacher to accommodate the seniority position of a less senior teacher proposed for termination, at the expense of a least senior teacher. Realignment is distinct from bumping in that it uses at least one other more senior teacher to eliminate a less senior teacher.

The distinction between the two procedures is important because bumping by seniority and licensure is an absolute statutory right, while realignment may involve an exercise of discretion by a school board. *See Strand,* 361 N.W.2d at 73.

■ In this case, relator was placed on ULA while Catherine Priest, a less senior teacher, was assigned a computer class that required no special licensure to teach, other than general licensure as a teacher. The hearing examiner, citing *Strand,* ruled that assignment of the computer course to relator was not necessary, as it would be impractical. Respondent adopted this ruling while rejecting the applicability of *Strand.* Respondent argues that Priest, who has a math-science background, is more qualified to teach the computer course than relator, who has a social science background. Respondent alleges that assigning relator to teach computer would place them in jeopardy with the State Department of Education licensing division, which has made it clear that districts should have qualified teachers in technical

subject areas such as computer science. However, considerations of impracticability and superior ability or qualifications, while laudable, have no place in a bump situation, because a bump is a statutorily mandated procedure. Case law strongly supports this interpretation of § 125.12, subd. 6b and the importance of recognizing seniority. *See, e.g., Pearson v. Independent School Dist. No. 381*, 356 N.W.2d 438, 441 (Minn.Ct.App.1984); *Roseville Education Association v. Independent School Dist. No. 623*, 353 N.W.2d 691, 693 (Minn.Ct.App. 1984); *Berland v. Special School Dist. No. 1*, 314 N.W.2d 809, 811–812 (Minn.1981), *reh'g denied* (March 23, 1982).

█ It is clear that teachers' ULA rights are governed by § 125.12. Under this statute, licensure and seniority are the only considerations in a bump situation. In this case, relator had the right to bump any less senior teacher, including Priest, from a position for which he was qualified. Relator had a general license to teach, which is all that was necessary to be qualified to teach the computer course. Relator was then entitled to exercise his statutorily mandated seniority rights and bump Priest from the computer assignment.

█ Relator also claims that his right to bump was erroneously denied when the school board failed to assign him available study hall hours. Respondent points out that no license is required to monitor a study hall, and argues that it is an administrative right to assign study halls to non-teachers. Respondent argues further that since teachers don't "teach" study halls, it would be a waste of the taxpayers' money to assign relator those hours.

While it is true that no license is required to "teach" study halls, it has been held to be an unfair labor practice for a school district to assign nonlicensed personnel to study halls when teachers have always been assigned to study halls, unless the subject is first negotiated. *Foley Education Ass'n. v. Independent School Dist. No. 51*, 353 N.W.2d 917, 924 (Minn.1984). In this case, since teachers have traditionally been assigned to study halls, respondent

must continue this practice unless negotiations determine otherwise.

### III.

Finally, relator contends that respondent acted arbitrarily when it rejected the hearing examiner's findings and recommendations and when it failed to provide reasons for rejecting the recommendations. Respondent school board did in fact reject some of the recommendations. Specifically, respondent deleted reference to the applicability of the *Strand* case to this situation, rejected the recommendation regarding the .4 gifted position, and rejected the recommendation that relator be assigned to available study halls.

Respondent argues that these changes were minor, necessary, and not essential to the decision and were made because the recommendations on these issues were inapplicable or inappropriate to the present situation. Relator argues that a hearing examiner's findings are entitled to "prima facie validity," and must be accepted absent some very good, stated reason.

█ Minn.Stat. § 125.12 does not require a school board to employ an independent hearing examiner when conducting ULA hearings. *See id.*, subds. 4, 9. However, case law strongly suggests that failure to do so would be a denial of due process. *See Schmidt v. Independent School Dist. No. 1*, 349 N.W.2d 563, 567 (Minn.Ct.App. 1984), *citing Ganyo v. Independent School Dist. No. 832*, 311 N.W.2d 497, 499 n. 2 (Minn.1981). The Minnesota Supreme Court has analogized the hearing examiner's power and role in such a case to that of a hearing examiner under the Administrative Procedure Act. *Ganyo*, 311 N.W.2d at 499 n. 2. As under the APA, the hearing examiner is required to make detailed findings and conclusions that are available for the school board to consider in reaching a decision. *Id.* While it is true that the hearing examiner's role is to make findings and conclusions, it does not necessarily follow, as relator suggests, that the board must accept and adopt these recommenda-

 **63**

tions. There is no basis for such a proposition in the statute or case law. Minn.Stat. § 125.12, subd. 10 states: "After the hearing, the *board* shall issue a written decision and order * * *. (Emphasis added.) Clearly it is the board, and not the hearing examiner that must make the final decision following the hearing. *Freier v. Independent School Dist. No. 197*, 356 N.W.2d 724, 731 (Minn.Ct.App.1984). The law does not require a school board to follow the recommended decision of the hearing officer. *Id.* It is within the school board's discretion to reach a different decision, subject, of course, to the right of judicial review. *Id.* at 732.

If the school board chooses not to follow the hearing examiner's recommendations, however, then it must provide reasons to support this action. As noted previously, the role of the hearing examiner for ULA hearings has been likened to that of a hearing examiner under the APA. *Id.* at 732 n. 1. It has also been previously noted that a school board's decision may be reversed if it is arbitrary. The decision of an administrative agency has been held to be arbitrary and capricious when the determination represents the agency's will and not its judgment. *Bryan v. Community State Bank of Bloomington*, 285 Minn. 226, 234, 172 N.W.2d 771, 776 (1969). When an agency rejects or significantly deviates from the hearing examiner's findings and does not explain its reasons for doing so on the record, it evidences the agency's desire to exercise its will and not its judgment. *Beaty v. Minnesota Board of Teaching*, 354 N.W.2d 466, 472 (Minn.Ct.App.1984). Consequently, a hearing examiner's report and recommendations should not be summarily rejected. *Id.*

In this case, respondent summarily rejected specific recommendations of the hearing examiner. This evidences an exercise of the respondent's will, not its judgment, and can be identified as arbitrary action, subject to reversal by this court. The recommendations that were not followed seem minor in light of the importance of the seniority issue, which recom-

mendation was followed by respondent. However, even if respondent's argument that these changes were minor and necessary is accepted, this is perhaps the very explanation which should have accompanied the decision rejecting the hearing examiner's findings.

## DECISION

1. Respondent provided adequate justification for relator's placement on ULA when it proved by competent evidence that relator's position was being discontinued. The statute requires no more than this.

2. The respondent school district proceeded under an erroneous theory of law by ignoring statutorily mandated seniority rights and placing relator on ULA while retaining a less senior teacher in a position which relator was qualified to teach, and by failing to assign relator available study halls traditionally assigned to licensed teachers.

3. Respondent was not required to follow the hearing examiner's recommendation, but should have provided reasons for decisions that were contrary to those recommendations.

Reversed.