Gail KVERNMO, Relator,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 403, Ivanhoe, Minnesota,
Respondent.

No. CX–95–1581.

Court of Appeals of Minnesota.

Jan. 9, 1996.

Review Denied March 19, 1996.

Harley M. Ogata, Minnesota Education Association, St. Paul, for relator.

Kevin J. Rupp, Sara J. Ruff, Ratwik, Roszak, Bergstrom & Maloney, P.A., Minneapolis, for respondent.

Considered and decided by KALITOWSKI, P.J., and CRIPPEN and FORSBERG,* JJ.

## OPINION

CRIPPEN, Judge.

Relator Gail Kvernmo seeks review of respondent Ivanhoe School District's decision

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

to place her on unrequested leave of absence after several of relator's usual courses were cut from the curriculum. Relator asserts that respondent was required by Minnesota statutory law to rearrange teacher schedules in order to assign relator two additional study halls per day, thereby allowing her to remain a full-time employee and reducing the assignments of two junior teachers by one period per day. We affirm.

## FACTS

Relator, a home economics teacher, has been employed full time with respondent school district since 1973. In spring 1995, respondent eliminated several of relator's courses from the curriculum, rendering her two classes per day short of a full teaching schedule. Respondent then placed relator on unrequested leave of absence from her full-time teaching position and recalled her to a .67 position, to teach three classes and supervise one study hall.

At her subsequent hearing, relator argued that respondent was required by seniority provisions contained in Minn.Stat. § 125.12, the statute governing teaching contracts, to rearrange its teaching assignments so as to allow relator to continue as a full-time teacher. Specifically, relator asserted that respondent could not lawfully retain less senior teachers as study hall supervisors while placing relator on unrequested leave.

It is undisputed that respondent has a longstanding policy of requiring full-time teachers' schedules to reflect a 5–1–1 pattern of five classes, one study hall, and one preparation period per day. Relator proposed that respondent alter various teacher's schedules so as to allow relator to take the study hall assignments of two junior teachers in addition to her customary study hall assignment, thereby creating for relator a full-time teaching schedule consisting of three classes, three study halls, and one preparation period. The

parties stipulate that no license is required for the supervision of study halls.

The hearing officer rejected relator's proposal, finding that section 125.12 does not require schools to treat additional study halls as classes for seniority purposes. We affirm.

## ISSUE

Is a school district required by statute to allow a senior teacher faced with unrequested leave to take additional study hall supervision periods assigned to junior teachers, thereby maintaining the senior teacher's full-time status?

## ANALYSIS

 Under Minnesota law, if a senior teacher whose position is discontinued is licensed for a position held by a junior teacher, the senior teacher is entitled to bump the junior teacher directly or through a realignment of other staff positions. Minn.Stat. § 125.12, *Strand v. Special Sch. Dist. No. 1,* 392 N.W.2d 881, 886 (Minn.1986); *Beste v. Independent Sch. Dist. No. 697,* 398 N.W.2d 58, 61 (Minn.App.1986). Inherent in seniority demand cases brought under section 125.12 is the availability of a suitable position for the teacher asserting seniority rights. Thus, as a first consideration, under the statute a senior teacher may only demand positions for which he or she is licensed:

No teacher who has acquired continuing contract rights shall be placed on unrequested leave of absence while probationary teachers are retained in positions for which the teacher who has acquired continuing contract rights is licensed * * *.

Minn.Stat. § 125.12, subd. 6b(a). In sum, because seniority rights attach for positions for which senior teachers are licensed and because, as the parties have stipulated, a teacher cannot be "licensed" to supervise study hall, seniority rights normally do not attach for the supervision of study halls.[1]

---

1. In further support of this conclusion, the hearing officer in this case noted section 125.12's definition of "teacher" in subdivision 1:

 Teacher defined. A principal, supervisor, and classroom teacher and any other professional employee required to hold a license from the

state department shall be deemed to be a "teacher" within the meaning of this section. Minn.Stat. § 125.12 subd. 1. This provision, together with subdivision 6b, reinforces the integral nature of a license to section 125.12's seniority provisions. *See also In re Proposed Placement on Unrequested Leave of Absence of Meyer,*

Licensure is not the only measure of availability of positions. If a senior teacher's position is discontinued, that teacher cannot, for example, demand another position that is also discontinued. The exercise of school management prerogatives thus may limit the availability of positions and the possibilities for seniority bumping or realignment.

■ The exercise of seniority rights may be similarly affected by the terms and conditions of teachers' employment. Normally, the terms and conditions of public employment are determined by collective bargaining. *See* Minn.Stat. §§ 179A.06, 179A.07 (1994) (sections of Public Employment Labor Relations Act pertaining to employee and employer rights and obligations). But a school district employer can unilaterally establish terms of employment if negotiation is waived or if the employment term is "consistent with the past practices of the parties." *See Foley Educ. Ass'n v. Independent Sch. Dist. No. 51,* 353 N.W.2d 917, 921 (Minn. 1984).

■ *Foley* provides express guidance on the importance of past practice in defining a school district's power to eliminate study hall assignments. In that case, evidence established a school district's past practice of assigning teachers to study hall supervision for one period per day. *Foley,* 353 N.W.2d at 919. Because there was no precedent for denying teachers the daily study hall assignment, the Minnesota Supreme Court held that the district could not unilaterally eliminate the assignments and hire nonlicensed personnel to supervise study halls. *Id.* at 923.

In the immediate case, the school district, having decided that a teacher's work assignment should not include more than one hour per day of study hall supervision, implemented a long-term practice reflecting that determination. Thus, like the court in *Foley,* we are confronted with a district's past practice of assigning one study hall per day. Under *Foley,* this past practice makes the one-hour study hall assignment a term and condition of employment just as if it were stated in the collective bargaining agreement. The district in this case was lawfully entitled to uphold this term of employment by refusing to reschedule teachers' assignments so that appellant supervised three study halls and by avoiding a change whereby other teachers supervised none.

The *Foley* decision demands this same conclusion in alternative language when it holds that duties traditionally assigned to teachers, like the daily one-hour study period, become part of the "work jurisdiction" of the public employees' bargaining unit. *Foley,* 353 N.W.2d at 924 (defining "work jurisdiction" as "the work assigned to members of the bargaining unit" and noting that work jurisdiction is a bargainable term of employment). The scope of work jurisdiction, *Foley* states, may be defined by a school district's past practice:

[T]he school district's unilateral action in assigning to persons who were not licensed teachers * * * study hall supervisory duties traditionally assigned to teacher members changed the unit work jurisdiction and, therefore, constituted an unfair labor practice.

*Foley,* 353 N.W.2d at 924. Applying the *Foley* court's analysis to this case, study hall assignments in addition to those traditionally assigned are not part of relator's "work jurisdiction." It follows inescapably that respondent's refusal to allow relator additional study halls, thus limiting relator's options in her exercise of seniority, was lawful.[2]

## DECISION

The hearing officer's determination that respondent is not required to permit relator

381 N.W.2d 476 (Minn.App.1986) (holding that the failure of a teacher to prove applicable licensure at required time prevented her from bumping or having reassigned a less senior teacher).

2. Relator relies heavily on *Beste v. Independent Sch. Dist. No. 697,* 398 N.W.2d 58 (Minn.App. 1986) for support of her argument that teachers must be allowed to exercise seniority rights over persons assigned to study halls. The *Beste* decision, insofar as it addresses study halls, merely states the holding of *Foley* that it is "an unfair labor practice for a school district to assign nonlicensed personnel to study halls when teachers have always been assigned to study halls." *Beste,* 398 N.W.2d at 62 (citing *Foley,* 353 N.W.2d at 924). The holding does not contradict what we have said in discussing *Foley.*

to exercise seniority rights to study hall assignments was correct. Respondent, having established a past practice of apportioning one study hall assignment per day per teacher, is not required by seniority provisions in Minn.Stat. § 125.12 to deviate from that practice so that relator may avoid an unrequested leave of absence by taking additional study halls held by junior teachers.

**Affirmed.**