**Tamia MOE, Relator,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 696, ELY, MINNESOTA, Respondent.**

**No. C9–00–1605.**

Court of Appeals of Minnesota.

March 27, 2001.

William F. Garber, Education Minnesota, St. Paul, MN, (for relator).

Scott C. Neff, Trenti Law Firm, Virginia, MN, (for respondent).

Considered and decided by LANSING, Presiding Judge, ANDERSON, Judge, and HALBROOKS, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Respondent Independent School District No. 696 placed relator Tamia Moe on an approximately 15% unrequested leave of absence. Relator sought to exercise seniority rights pursuant to Minn.Stat. § 122A.40, subd. 11 (2000). Following a hearing, respondent determined that relator's teaching schedule did not allow her to bump into supervisory assignments held by two less-senior teachers without compromising the educational needs of the district's students. Because respondent did not err in applying the law and because the decision is supported by substantial evidence, we affirm.

## FACTS

Relator, employed by respondent Independent School District No. 696 in Ely, Minnesota, is a continuing-contract art teacher who teaches both elementary and secondary students. Relator, the only art teacher in the district, has a "seniority date" of July 5, 1994 and is ranked 38 of 40 teachers on respondent's tenured seniority list. The district also employs 14 probationary teachers.

In response to a decline in enrollment and budget, respondent eliminated a 40 minute afternoon section of elementary art for the 2000–01 school year. Respondent proposed to place relator on an unrequested leave of absence (ULA) equal to about 65 minutes per day, or a .155 full-time equivalent (FTE). Relator requested and received a hearing before an independent hearing examiner.

At the hearing, relator contended that she was not the appropriate teacher to be placed on ULA because statutory bumping rights allowed her to take supervisory periods, such as lunch and study hall, from less-senior teachers. Relator argued that by changing her preparation and lunch schedule, she could assume the supervisory duties held by one or both of two less-senior probationary teachers. The less-senior teachers, relator contended, would become the appropriate teachers to be placed on ULA.

The independent hearing officer found that relator's elementary and secondary teaching schedule did not coincide with the periods supervised by the less-senior teachers. The hearing officer concluded that allowing relator to bump into one of the less-senior teachers' supervisory periods would leave students unattended for several minutes. The hearing officer de-

termined that scheduling must meet the best interests of the students and that those interests could not be discounted in favor of furthering seniority rights. The school board adopted the hearing officer's findings and conclusions and further concluded that, based on the proportion of time relator taught in the secondary school, she would not be entitled to sufficient supervisory time there. Respondent placed relator on ULA to the extent of .155 FTE.

Relator proceeds by writ of certiorari, alleging legal error and a·result based on insufficient evidence.

## ISSUES

I. Did respondent base the decision to place relator on unrequested leave of absence on an erroneous theory of law?

II. Is there substantial evidence in the record to support respondent's decision to place relator on unrequested leave of absence?

## ANALYSIS

Relator argues that respondent applied an erroneous theory of law and reached a conclusion that was not supported by the evidence by placing her on ULA. Relator contends that the evidence shows she is, pursuant to Minn.Stat. § 122A.40, subd. 11(a) (2000), entitled to bump less-senior teachers from supervisory positions, such as lunch room or study hall, and that such positions were available.

■ The nature of judicial review in a certiorari proceeding is limited. The school board's decision is not reviewed de novo and will not be set aside unless the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence in the record, not within the school board's jurisdiction, or based on an erroneous theory of law. *Ganyo v. Independent Sch. Dist. No. 832,* 311 N.W.2d 497, 500 (Minn. 1981).

### I.

■ We·first consider whether respondent applied an erroneous theory of law in determining the scope of relator's contractual bumping rights. Respondent concluded that, based on past district practice, relator was entitled to bump into existing supervisory positions of less-senior teachers. But respondent found, considering relator's teaching schedule, that she could not bump into an existing supervisory position without leaving students unattended for several minutes. Respondent decided that because the interests of the district's students would not be served by leaving them unattended, no existing position was available to relator.

Because relator's contract does not contain a negotiated unrequested leave provision, her situation is governed by state statute. Minnesota law provides that boards of education may place teachers on unrequested leaves of absence as needed to respond to declining enrollment or a reduced budget. Minn.Stat. § 122A.40, subd. 11. Moreover, a teacher with continuing contract rights must not be placed on ULA while probationary teachers are retained "in positions for which the teacher who has acquired continuing contract rights is licensed * * *." *Id.,* subd. 11(a). Case law interpreting Minn.Stat. § 122A.40 has further clarified the scope of bumping rights.[1]

■ If a senior teacher whose position is discontinued is licensed for a position held by a less-senior teacher, the senior

---

1. In 1998, the legislature recodified Minn. Stat. § 125.12 as Minn.Stat. § 122A.40. *See* 1998 Minn. Laws ch. 397 (recodification). Consequently, pre 1998 case law in this area references the earlier version of the statute.

teacher is entitled to bump the less-senior teacher directly or through a realignment of other staff positions, provided that the senior teacher is appropriately licensed for the position sought. *Kvernmo v. Independent Sch. Dist. No. 403*, 541 N.W.2d 620, 621 (Minn.App.1996), *review denied* (Minn. Mar. 19, 1996); *see also Beste v. Independent Sch. Dist. No. 697*, 398 N.W.2d 58, 61 (Minn.App.1986) (distinguishing bumping from realignment; the latter requires reassignment of a second senior teacher to accommodate the first senior teacher).

■ Bumping rights do not, however, require districts to make unlimited staffing changes. The demanded position must be an existing position; a teacher has no right to ask the school board to create one. *In re Independent Sch. Dist. No. 318*, 435 N.W.2d 81, 84 (Minn.App.1989). Relator is a licensed, contract art teacher with seniority over two contract teachers and fourteen probationary teachers. Relator had a right to bump into their schedules for existing art-teaching positions. The school district, however, did not have any other art positions available. As a result, relator sought to bump into a supervisory position, such as a study hall or lunchroom assignment.

■ Because a teacher cannot be "licensed" to supervise, "seniority rights normally do not attach for the supervision of study halls." *Kvernmo*, 541 N.W.2d at 621 and n. 1. But whether seniority rights attach to a particular position, including supervision of study halls, turns on the past practice of the school district. *Id.* at 622; *see also Foley Educ. Ass'n v. Independent*

*Sch. Dist. No. 51*, 353 N.W.2d 917, 924 (Minn.1984) (recognizing the importance of past practice and determining that school district's departure from past practice of assigning licensed teachers to supervise study halls constituted an unfair labor practice).

In this case, the past practice of the school district was to allow licensed teachers in the secondary school to have supervisory assignments from time to time. Past practice shows those assignments were 50 minutes in length and available only in the secondary school. Thus, relator had a right to bump into any less-senior secondary school teacher's assignment for which relator was licensed, including the right to bump into, at most, 50 minutes of a less-senior teacher's supervisory assignment in the secondary school.[2]

■ But "[t]he exercise of school management prerogatives * * * may limit the availability of positions and the possibilities for seniority bumping or realignment." *Kvernmo*, 541 N.W.2d at 622. Even if a teacher has a contractual right to bump into supervisory duties, a school board must balance the feasibility of doing so with the educational interests of the school children:

> The policy basis for according discretion to school boards is premised not on the fact that school board discretion is an end unto itself, but rather that this discretion be exercised so as to advance and protect the educational interests of school children.

*In re Independent Sch. Dist. No. 318*, 435 N.W.2d at 84–85 (applying policy in a

2. Relator teaches ⅗ time in the secondary school, and the parties dispute the number of minutes of supervisory time relator is entitled to bump. Respondent concluded that a full-time secondary-school teacher would only be entitled to a supervisory assignment equivalent to 20% of teaching time (50 minutes) and therefore relator, teaching ⅗ time in the secondary school, is only entitled to 30 minutes of secondary-school supervisory time. A 20%

supervisory assignment is consistent with past practice of full-time secondary-school teachers, but there is no evidence in the record concerning any past practice by the district of granting a pro-rated share of supervisory time to teachers who, like relator, instruct in both the elementary and secondary schools. We do not address the percentage of relator's entitlement, however, because respondent's decision rested on schedule incompatibility.

bumping situation and citing *Strand v. Special Sch. Dist. No. 1,* 392 N.W.2d 881, 885 (Minn.1986) (holding that in realignment situations, "the school district's needs reflecting the welfare of the students and public" must be considered) and *Westgard v. Independent Sch. Dist. No. 745,* 400 N.W.2d 341, 345 (Minn.App.1987) (discussing school district's needs as a factor in a realignment context), *review denied* (Minn. Apr. 17, 1987)). Accordingly, as respondent concluded, relator was entitled to bump into an existing secondary-school supervisory position held by a less-senior teacher so long as the bump did not require scheduling adverse to the interests of the district's students. Because respondent correctly assessed the extent of relator's bumping rights, we hold that respondent did not base its conclusion on an erroneous theory of law.

## II.

▉ Relator next argues that respondent has not shown, by substantial evidence, that if she bumped into an existing less-senior teacher's supervisory assignment, the bump would be adverse to student interests. Respondent counters that, given relator's teaching schedule, there were no supervisory assignments held by less-senior teachers into which relator could bump without leaving students unattended for brief periods of time.

In 2000–01, relator's art-teaching schedule, reflecting the .155 FTE reduction, is:

| AM | 8:10 to 9:00 | Secondary School |
|----|--------------|------------------|
|    | 9:10 to 9:40 | Elementary School |
|    | 9:45 to 10:15 | Elementary School |
|    | 10:20 to 10:50 | Elementary School |
|    | 10:50 to 11:40 | Preparation Time |
|    | 11:40 to 12:12 | Lunch |
| PM | 12:12 to 1:02 | Secondary School |
|    | 1:06 to 1:56 | Secondary School |

Only two less-senior teachers hold 2000–01 supervisory assignments. Respondent assigned secondary-school math teacher Thomas Maloney to supervise study hall on Mondays, Wednesdays, and Fridays from 10:52 to 11:42. On Tuesdays and Thursdays, Maloney supervises a lunchroom from 10:48 to 11:18. Secondary-school science teacher Todd Hohenstein's supervisory assignment is scheduled from "11:40 to 12—approximately 12:15." Respondent also considered: (1) respondent provides teachers with a duty-free lunch period of at least 30 minutes; (2) relator's contract requires that the district give her preparation time equal to 20% of teaching time; (3) students are allowed four minutes to pass between classes; and (4) the elementary and secondary schools are in separate buildings.

Comparing relator's schedule with the less-senior teachers' supervisory assignments shows:

(1) Maloney's Tuesday/Thursday lunchroom duty overlaps relator's last morning elementary art class by two minutes. Relator could not bump into this assignment without leaving her elementary art class at least two minutes early or arriving at Maloney's lunchroom duty at least two minutes late.

(2) Maloney's Monday/Wednesday/Friday study-hall duty overlaps relator's lunch by two minutes. Relator could bump into this partial assignment, but only by reducing or rescheduling her preparation and lunch times.

(3) Hohenstein's daily supervisory duty overlaps relator's first afternoon secondary-school art class by three minutes. Relator could not "bump" into this assignment without leaving the supervisory duty at least three minutes early or arriving at least three minutes late to her secondary-school art class.

The school superintendent testified that if the district were required to cut into other teachers' time, or forced to provide supervisory time that is not consistent with existing schedules, the result would be an "unreasonable mess" and that the district could not "afford to diminish the

quality of education" provided to students. The supervision of students at all times is a legitimate school-management concern that sufficiently supports respondent's decision in this case.

Relator, however, contends that by shortening her lunch, she could bump into Maloney's Monday/Wednesday/Friday study hall. Alternatively, she contends, by switching her lunch and preparation times, she could bump into Hohenstein's supervisory duty, which she alleges actually ends at 12:12, not 12:15, based on her own secondary-school schedule. Relator also suggests that the less-senior teachers could "cover" for her for the few minutes she may need to arrive late to or leave early from the supervisory assignments. But there is no evidence in the record that Hohenstein's supervisory schedule actually ends at 12:12. Additionally, and significantly, the partial bumping and covering arrangements relator proposes do not result in the desired cost savings to the district because the less-senior teachers must be paid to remain at school to fulfill portions of the supervisory assignments.

Relator argues that *Westgard* "makes it explicit that the district must attempt to create a schedule which will accommodate the most senior teachers" and contends that the school did not make the required attempt to shift positions. Though *Westgard* recognized the statutory right to bump, the decision to reverse and reinstate the terminated teacher turned on the district's failure to consider *realignment.* 400 N.W.2d at 345–46. As *Westgard* explains, realignment involves the shifting of several *licensed* positions to accommodate a senior teacher. *Id.* at 345. Because relator, licensed only to teach art, could not have been reassigned a different licensed position, we reject this argument.

Finally, to the extent that relator argues she is entitled to bump into parts of both Maloney's and Hohenstein's assignments, she in essence asks that the school district craft a position for her from two other positions. The argument that a school district must create a position or move a class time contrary to student needs to accommodate bumping has been rejected by this court. *See In re Independent School Dist. No. 318,* 435 N.W.2d at 84–85 (concluding that district was not required to move a Title I class from morning to afternoon to allow teacher placed on ULA to exercise bumping rights).

Consequently, relator has not pointed to an existing position into which she can bump without leaving students unattended, a situation that respondent reasonably seeks to avoid. We conclude that there is substantial evidence to support respondent's conclusion that there is no existing position into which relator can bump. Accordingly, we hold that respondent correctly determined that relator is the correct teacher to be placed on unrequested leave of absence.

## DECISION

Respondent school district did not apply an erroneous theory of law by concluding that, consistent with past district practice, relator had a right to bump into existing supervisory assignments held by less-senior teachers so long as the exercise of that right did not compromise the students' educational needs or the district's supervisory responsibilities. Substantial evidence that the exercise of relator's bumping rights would leave students unattended supported respondent's decision to place relator on unrequested leave of absence.

**Affirmed.**